**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Rory DOREMUS and David Doremus,
Defendants/Appellants.**

No. MS 3025.

United States District Court,
D. Idaho.

April 21, 1987.

Maurice O. Ellsworth, U.S. Atty., D. Idaho, Jeffery W. Ring, Asst. U.S. Atty., Boise, Idaho, for plaintiff/appellee.

Wilbur T. Nelson, Boise, Idaho, for defendants/appellants.

RYAN, District Judge.

## I. FACTS

This is an appeal by Rory and David Doremus from their convictions after court trial before United States Magistrate Stephen M. Ayers. Both appellants were charged and convicted of violating 36 C.F.R. § 261.10(k) by exceeding the terms of an approved operating plan for a mining claim by keeping more than five trenches open as provided by the plan and for violating 36 C.F.R. § 261.9(a) by damaging trees

and surface resources on National Forest land. Title 36 C.F.R. § 261.10(k) (1986) prohibits "[v]iolating any term or condition of a special-use authorization, contract or approved operating plan." Title 36 C.F.R. § 261.9(a) (1986) prohibits "[d]amaging any natural feature or other property of the United States."

The appellants staked mining claims in the Red River Ranger District of the Nez Perce National Forest in the early 1970's. Since that time, the appellants have conducted mining operations on these claims under Forest Service approved operating plans. Operating plans are provided for pursuant to 36 C.F.R. §§ 228.1 through 228.63. Criminal charges for violation of these regulations is authorized by 16 U.S.C. § 551.

An operating plan for the year 1985 was signed by Appellant Rory Doremus and the District Ranger for the Red River Ranger District of the Nez Perce National Forest. The 1985 operating plan was drafted to incorporate changes from the 1984 operating plan requested by Appellant Rory Doremus as well as other provisions distinct from the 1984 operating plan. A portion of the plan provides in paragraph IV–A that no more than five trenches will be open at one time. This limitation was proposed by the appellants. Paragraph IV–A also limits the exploration to the clearcut area. Other paragraphs dealing with acceptable uses and practices with respect to timber include prohibition against use of live green trees for firewood and camp construction, and that all timber requirements be met by the use of small dead timber. The plan requires that all amendments be in writing. The District Ranger, or a designated representative authorized to approve amendments, is located approximately seven miles from the defendants' claims.

The trial court found that the appellants dug trenches and did excavation work outside the area of exploration and that on July 31, 1985, there were in excess of thirty trenches open, some of which were larger than the prescribed size. The trial court further found that the appellants had pushed over trees in excess of the authori-

ty allowed. Other activities in excess of the operating plan were noted by the trial court. On June 18, 1986, the trial court entered its memorandum opinion, concluding that both appellants were guilty as charged beyond a reasonable doubt.

## II. ISSUES PRESENTED FOR APPEAL

In their reply brief, the appellants note the issues presented for appeal as:

1. Whether the regulations upon which conviction was predicated are [ ]void for vagueness, and hence violative of the Due Process clause of the Constitution.

2. Whether the evidence is sufficient to support the convictions.

Appellants' Reply Brief, filed March 24, 1987, at 2. Finally, throughout the briefing is a general discussion of what appellants contend is a conflict between the regulatory scheme and the statutory pronouncements. In essence, appellants contend that the proclamations of Congress demand deference to reasonable activities of miners and that if one looks to this for analysis, the activities of the appellants must be tested under a general reasonableness standard. Appellants argue that if their conduct was reasonable, despite the operating plan, then they cannot be convicted. Regulations which make that reasonable conduct illegal must fall in the shadow of the statutes. This "issue" will be addressed first and the understanding of the statutory and regulatory scheme set forth in that analysis will provide the basis for analysis of all issues raised on appeal.

## III. STANDARD OF REVIEW

Actual findings of the trial court which have been expressed in findings of fact and conclusions of law are subject to a clearly erroneous standard of review. *United States v. Bautista*, 509 F.2d 675 (9th Cir. 1975). Questions of law are subject to *de novo* review. *United States v. Nance*, 666 F.2d 353 (9th Cir.1982); *United States v. Moreno-Pulido*, 695 F.2d 1141 (9th Cir. 1983). When mixed questions of fact and law are presented, the standard of review turns upon whether the court sees the factual matters or the legal matters as predominant. *United States v. Owens*, 789 F.2d 750 (9th Cir.1986).

## IV. ANALYSIS

### A. *Statutory and Regulatory Scheme*

The Surface Resources Act of 1955, 30 U.S.C. § 612, acknowledges a right of the United States to manage and dispose of the vegetative surface resources surrounding mining claims, but posits that any limitations of the surface of a mining claim by the United States shall be such as not to endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto. *United States v. Richardson*, 599 F.2d 290 (9th Cir.1979). Under the same statute, miners have a right to remove timber when it is reasonably incident to the mining operation. The National Mining and Minerals Policy Act of 1970, 30 U.S.C. § 21, and the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1732, recognize the oftentimes competing, but equally important, policies of fostering mining exploration and development and protecting the environment. A balancing of these competing interests is required. *United States v. Richardson*, 599 F.2d 290 (9th Cir.1979); *United States v. Weiss*, 642 F.2d 296 (9th Cir.1981).

Title 36 C.F.R. § 261, *et seq.*, has been promulgated by the Secretary of Agriculture under authority of the Organic Administration Act of June 4, 1897, specifically, 30 Stat. 35 and 36 (Oct. 23, 1962), 16 U.S.C. §§ 478 and 551. These provisions are part of the statutory scheme which covers the National Forests and which confers administration of the National Forests upon the Secretary of Agriculture. *See* 16 U.S.C. §§ 471–583i. Under Sections 478 and 551, the Secretary may make rules and regulations for the protection and preservation of the National Forests, and all persons entering upon that land must comply with the rules and regulations. *United States v. Weiss*, 642 F.2d 296 (9th Cir.1981); *United States v. Richardson*, 599 F.2d 290 (9th Cir.1979).

The Secretary of Agriculture is, then, given the directive to promulgate regulations to implement the policies recognized by Congress. While the Secretary of Agriculture does not have the authority to regulate mining per se, when mining activity disturbs National Forest land, regulation is appropriate. *United States v. Goldfield Deep Mines Company of Nevada*, 644 F.2d 1307 (9th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982). Regulatory schemes are necessary to provide some definition to the broad policy statements of Congress and establish a give-and-take system wherein the pristine state of the environment is compromised in favor of promoting mining concerns and at the same time reigning in unbridled upset of the environment and its ecological systems by miners. In other words, mining exploration and development is to be encouraged and promoted, but reasonable regulations are tolerated to protect the environment.

██ Laws and regulations must be sufficiently definite when regulating conduct, especially where providing criminal sanctions, so that a person of reasonable intelligence, exercising common understanding and practice, receives a fair and reasonable warning of that which is proscribed. *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Schwartzmiller v. Gardner*, 752 F.2d 1341 (9th Cir.1984).

Title 30 U.S.C. § 612 suggests that activities reasonably incident to mining operations must be tolerated. It does not, however, provide in any specific terms what is or is not reasonably incident to mining operations. It is left to the Secretary to draft regulations within the framework dictated by Congress to balance the competing interests of the miners and the environment and to provide definition to what is and is not considered reasonable.

The regulations, in and of themselves and through the vehicles they employ, must make the laws of Congress fact specific so as to provide adequate notice of expected conduct and withstand a vagueness challenge. Necessarily, each mining operation and the environment which contains it will vary as to needs and circumstances. The drafters of the statutes and regulations cannot and need not foresee, delineate and proscribe conduct for each and every circumstance or set of circumstances. The court in *United States v. Weiss*, 642 F.2d 296 (9th Cir.1981), noted that each mining operation must be evaluated independently. The court recognizes that the nature of the activity prohibits statutory and regulatory drafters from writing with specificity. The mechanism approved by the *Weiss* court for detailing for each operation the conduct, tailored to each operation, deemed reasonable under the circumstances is the operating plan. *See* 36 C.F.R. § 228 (1986).

The purpose of the operating plan is to provide definition to the statutory and regulatory terms "reasonable" and "significant." The operating plan, then, becomes the definition of what is reasonable. The operating plan is the vehicle employed by the regulations to make the statutes and regulations sufficiently fact specific to notify the reasonable person of the conduct contemplated. The outer reaches of the terms of the operating plan are the outer reaches of what is reasonable under the circumstances of the specific mining operation.

The miner agrees to confine his operations to the terms of the operating plan. The miner must sign the plan. The miner has input into the terms of the plan and, in fact, is the first to suggest what the scope of his operations will be so that they can be provided for in the plan. Since the operating plan itself becomes the definition of what is reasonable and significant conduct under the circumstances, operating outside the terms of the operating plan vehicle violates the plan and is unreasonable.

It is agreed by all that even the plan itself cannot be drafted so as to foresee and proscribe conduct for every situation which may arise as mining takes place. In recognition of this problem, amendments may be obtained.

In summary, in this area Congress has provided broad policy statements recognizing the competing interests of mining operations and the environment. Congress has directed the Secretary of Agriculture to draft regulations which do not materially interfere with mining operations and the reasonable incidents thereto, but which, at the same time, protect the environment from unbridled destruction. The regulations drafted by the Secretary cannot contemplate or define what is reasonable conduct with respect to mining under all circumstances. With this in mind, the regulations provide for a vehicle by which representatives of the Secretary, together with the mining operator, define what is reasonable under the circumstances attendant the specific mining operation. This vehicle is the operating plan. The regulations of the Secretary also provide that violation of this plan is prohibited, since such action would be unreasonable under the circumstances. 36 C.F.R. § 261.10(k). Conduct which is violative of the operating plan violates the regulatory scheme and the statutory scheme.

The regulations also prohibit certain other conduct such as damaging natural features or property of the United States. 36 C.F.R. § 261.9(a). Therefore, those regulations which can prohibit conduct under any factual circumstances, together with the operating plan, provide the miner with a description of that conduct which is acceptable under the circumstances and that conduct which tips the scales to the detriment of the environment.

In this case, the appellants have argued that the regulations conflict with the pronouncements of Congress, particularly 30 U.S.C. § 612. The court finds no such conflict. The statute provides for limited regulation of the mining activities on National Forest land in the interest of the protection and preservation of the National Forests. As stated in *United States v. Richardson,* 599 F.2d 290 (9th Cir.1979), that regulatory right is limited so as not to endanger or materially interfere with mining operations.

Appellants have argued that their actions were reasonable and so in conformance with 30 U.S.C. § 612. Appellants contend that since they are in conformance with the requirements of 30 U.S.C. § 612, any regulation which deems that same action unreasonable and illegal is contrary to the statute and must fall in deference to the statute. However, the definition of reasonable as contemplated by the statute is found in the regulatory scheme incorporating the operating plan.

### B. *Vagueness*

Appellants have asserted that the regulations upon which their convictions are based, 36 C.F.R. § 261.10(k) and 36 C.F.R. § 261.9(a), are vague both facially and as applied. The requirement that criminal statutes be specific in the conduct they forbid is founded on principles of due process. A person of reasonable intelligence, exercising common understanding and practice, must be provided fair and reasonable warning of that which the law proscribes. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). Absent a question of first amendment freedoms, the statute or regulation is examined in the light of the facts of the case at hand. *United States v. Louderman,* 576 F.2d 1383 (9th Cir.1978).

### 1. *Title 36 C.F.R. § 261.10(k).*

Initially, appellants rather weakly attempt to suggest to this court that their activities in working their mining claims were not significant disturbances of surface resources and, therefore, did not even require the existence of an operating plan. This argument was not raised below, the evidence is quite to the contrary, and the appellants had operated under an operating plan for several years prior to 1985 and had signed and acknowledged the terms of the 1985 operating plan. Appellants cannot argue that an operating plan should not have been developed to guide their conduct for the first time on appeal. In any event, the trial court's finding that a valid operating plan was in existence for the year 1985 is supported by the record and the admissions of the appellants.

■ The next question which should be addressed is whether amendments were made to the operating plan. The trial court found that oral amendments had been made to operating plans for years prior to 1985. This trial court found that the 1985 operating plan required all amendments to be in writing and that no written amendment was made to the operating plan. The trial court's findings regarding amendments to the plan are substantiated by the record and any conflicting evidence was a matter for the trier of fact to determine. This court holds that the trial court's factual findings are supported by the record and are upheld.

The trial court found that on July 31, 1985, in excess of thirty trenches were open at the mining site. The trial court concluded that the appellants had violated the terms of the operating plan by keeping more than five trenches open on July 31, 1985. A portion of the plan provides in paragraph IV–A that no more than five trenches will be open at one time. The trial court found that 36 C.F.R. § 261.10(k) was certainly clear on its face and as applied.

■ Facially, 36 C.F.R. § 261.10(k) prohibits violating a term or condition of an operating plan. Looking merely at the regulation itself, without for the moment considering the operating plan, the regulation is clear on its face. Appellants state that absent any requirement of intent, the regulation is impermissibly vague in any application, because it makes no reference to matters reasonably related to effectuation of mining laws, nor is there provision within Section 10(k) for description of prohibited conduct by any authorized legislative or regulatory body. The analysis of the statutory and regulatory scheme set forth above sounds the death knell for this argument. The regulation does, in fact, refer to matters reasonably related to effectuation of mining laws when one realizes that the operating plan defines those matters reasonably related to effectuation under the circumstances. Similarly, a description of the prohibited conduct is the essence of the operating plan and the statutes authorize the Secretary of Agriculture to provide regulations and vehicles and to designate representatives to tailor and to limit conduct under the circumstances of each case. The court finds that 36 C.F.R. § 261.10(k) is clear on its face and that a *de novo* review mandates upholding the trial court's determination.

■ Appellants have also asserted that 36 C.F.R. § 261.10(k) is void for vagueness as applied to the facts of this case. The trial court found that maintaining more than five open trenches clearly violated the terms of the operating plan and that the operating plan was itself specific enough so as not to succumb to a challenge for vagueness.

Appellants have, for the first time on appeal, and without any mention of such interpretation in the record, suggested to this court that the condition that only five trenches remain open could reasonably be interpreted so that the phrase "at one time" implies a reasonable period of time to leave trenches other than five active trenches open while assay results are being obtained and reclamation work is finished. The court cannot find that this argument was raised below. In any event, such an assertion flies in the face of the clear language of the operating plan. The plan provides for no more than five trenches to be open at one time. The plan does provide for test trenches. The language of the operating plan could not be more clear. Five trenches is all that is allowed and no more. The plan does not refer to five active trenches, or five active trenches and trenches to be reclaimed, or five active trenches and test trenches and trenches to remain open while assay results are being obtained. The plan states, five trenches. Appellants stretch credulity in asserting the interpretation for the first time on appeal. The court holds that 36 C.F.R. § 261.10(k) clearly sets forth the proscribed conduct under the facts of this particular case, the trial court's conclusions are not clearly erroneous, and even a *de novo* review of this mixed question of law and fact results in a conclusion that the statute is

not void for vagueness and the trial court properly so held.

### 2. *Title 36 C.F.R. § 261.9(a).*

■ The appellants have challenged this regulation as being vague on its face. Title 36 C.F.R. § 261.9(a) prohibits "damaging any natural feature or other property of the United States." Title 36 C.F.R. § 261.2 states that "[d]amaging means to injure, mutilate, deface, destroy, cut, chop, girdle, dig, excavate, kill or in any way harm or disturb." The term "natural feature" is not defined in the regulation. Forester Ronald Allen Gardner testified at the trial that "natural feature" would be any feature present in nature such as trees, rock outcrops, soils and water.

The trial court found that the vagueness challenge to 36 C.F.R. § 261.9(a) was somewhat more troublesome than the challenge to 36 C.F.R. § 261.10(k). However, the trial court found that the regulation is sufficiently clear so that an ordinary person, exercising ordinary common sense, can sufficiently understand and comply with it. The court found that there is no doubt that the appellants damaged the natural features of the environment with their trenching, destruction of trees and other excavation work.

The regulation's definition of "damaging" is as would be expected from a dictionary definition. The definition parallels a common sense, everyday definition of "damaging." Plaintiff argues that the definition is overbroad and could include bending a blade of grass on National Forest land. The argument is too abstract to be relevant to a challenge to the regulation as being vague on its face. The term "damaging" is defined and provides reasonable notice of what is proscribed.

The appellants have argued that the term "natural feature" is not defined and provides insufficient notice as to its meaning. Common sense suggests that natural would be the opposite of unnatural or man-made. The environment and all of its features or elements unaffected by intrusion by man is the broad picture. The material aspects such as trees, rocks, soil and water are the features of nature. The court finds nothing vague about this common sense definition. Upon *de novo* review, the court has determined to uphold the conclusion of the trial court that 36 C.F.R. § 261.9(a) is not unconstitutionally vague on its face.

■ The appellants have also challenged 36 C.F.R. § 261.9(a) as being vague as applied to the case. The violation is the destruction of live trees. The trial court found that trees had been pushed over on or before July 30, 1985, in excess of the authority of the plan. The trial court concluded that the appellants had damaged natural features by pushing over trees. The trial court found the regulation to be sufficiently clear both on its face and as applied to withstand constitutional challenge.

Appellants make reference to pushing over a tree. However, the exhibits show that numerous live trees were knocked over or bulldozed down. Certainly, damage is inflicted when a live tree is destroyed by being pushed over. Equally certain, live green trees are a feature of nature. The regulation, as applied to this case, is not vague. The situation in this case involves the bulldozing of numerous live trees, not the bending of a blade of grass or accidental or incidental knocking over of one tree.

The challenge should also be reviewed with respect to the operating plan. The situation under the regulations with respect to miners is different than that with respect to others. Miners are statutorily given more rights to alter the environment, but are also, as noted above, limited. The limitation is embodied in the operating plan.

In this case, the operating plan states that all timber requirements are to come from small dead trees. The operating plan states that the area of exploration and trenching is to be confined to the clearcut area. Appellants did not confine themselves to the clearcut area, but instead went into the wooded area and knocked down live trees.

Appellants argue that the operating plan does not expressly state that trees cannot be knocked over. Appellants argue that in following the contours of the land or a significant vein, the trenching may zigzag and a small tree may get into the way. Appellants argue that it is reasonable to destroy the tree. This argument was made below to the trial court. However, as noted above, what is reasonable under the circumstances of this mining operation is spelled out in the operating plan. Appellants cannot look solely to the statutes and prey on the word "reasonable." The operating plan provides for written amendment and an agent authorized to make such written amendment is available within seven miles of the claims of the appellants. Authorization to exceed the clearcut area or remove live trees could have been sought via the amendment process. It was not.

Appellants' argument that it is unreasonable to make them stop operating and get an amendment to move a small tree is inapposite on this appeal. That argument should have been addressed when the operating plan development was in progress. Furthermore, it does not appear to be unreasonable to seek amendment to the operating plan when it appears that operations need to go outside of the clearcut area, necessarily involving the destruction of live trees.

The regulation prohibits damaging natural features. As found by the trial court, numerous trees were not just trimmed or nicked by a bulldozer, but pushed over. This act was outside of the operating plan and was unreasonable under the circumstances. The conduct prohibited by regulation, under the circumstances of this case, was clearly dictated and clearly exceeded. The court holds that upon full review, the finding of the trial court that 36 C.F.R. § 261.9(a) is not unconstitutionally vague as applied to this case, is correct and is upheld.

### C. *Sufficiency of Evidence*

■ Appellants have argued that insufficient evidence was produced below to sustain their convictions. Specifically, appellants again argue that their conduct was reasonable and, therefore, in accord with 30 U.S.C. §§ 612 and 613. Appellants argue that the government put on no evidence of the reasonableness of their actions. However, as addressed above, the operating plan defines the extent of reasonableness under the circumstances. Not only was there abundant evidence to show that more than five trenches were open and that features of nature, i.e., live trees, were damaged, but that this was done in violation of the operating plan. The evidence regarding the damaging of natural features should find some guidance from the operating plan as discussed above. The evidence in the record clearly shows that natural features of the environment were damaged. Clear and convincing evidence supports the trial court's findings and conclusions and conviction of the appellants. They will not be upset on appeal.

The decision of the magistrate and the convictions are, in all respects, AFFIRMED.