**BIG BEAR SUPER MARKET NO. 3, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 89–70227.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1990.

Decided Sept. 6, 1990.

---

James S. Munak, San Diego, Cal., for petitioner.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, Karen L. Fletcher, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before REINHARDT and HALL, Circuit Judges, and RE, Judge.*

PER CURIAM:

Big Bear Super Market appeals a fine imposed by the Immigration and Naturalization Service, and upheld by an Administrative Law Judge and the Chief Adminis-

* Hon. Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

trative Hearing Officer of the United States Department of Justice. The fine was for violations of the employment verification requirements of the Immigration Reform and Control Act of 1986. 8 U.S.C. § 1324a (1990). We affirm.

## FACTS

In order to assist employers in adhering to the record-keeping provisions of the Immigration Reform and Control Act ("IRCA"), which require them to verify that at the time of hiring all new employees are either United States citizens or otherwise eligible for employment, the Immigration and Naturalization Service ("INS" or "government" or "Border Patrol") developed and distributed the Form I–9 in May 1987. 8 U.S.C. § 1324a(i)(1)(A). IRCA, together with its implementing regulations, provides that after gathering and recording the employment eligibility information on the Form I–9, the employer must retain the Form and make it available for government inspection. 8 U.S.C. § 1324a(b)(3); 8 C.F.R. § 274a.2(b)(2). On September 11, 1987, INS agents conducted a routine inspection of Big Bear's Forms I–9. As a result of this inspection, the INS issued a citation to Big Bear alleging numerous record-keeping violations, pursuant to 8 U.S.C. § 1324a(i)(2) and 8 C.F.R. § 274a.9, including 183 instances in which Big Bear failed to prepare Forms I–9 for individual employees. The company then attempted to correct all of the violations referred to in the citation, and in fact mistakenly believed that it had done so. However, due to a clerical oversight, 135 record-keeping violations remained uncorrected, including 132 instances in which a Form I–9 still had not been prepared. On December 11, 1987, INS agents conducted another inspection of Big Bear's Forms I–9, and discovered the uncorrected 135 record-keeping errors. Even though Big Bear explained that its failure to have its records in proper order was due to a clerical oversight, on March 8,

1988, the INS served it with a Notice of Intent to Fine ("Notice"). The Notice alleged that Big Bear was in violation of the record-keeping provisions of the Act.

Under the applicable statutory and regulatory scheme, if a company desires a hearing before an Administrative Law Judge ("ALJ") to contest a fine imposed by the government for a violation of IRCA, the company is required to file a request for such a hearing with the Chief Administrative Hearing Officer ("Chief Officer"). 8 U.S.C. § 1324a(e)(3); 8 C.F.R. § 274a.9(d). On March 30, 1988, Big Bear filed a timely request with the Chief Officer for a hearing before an ALJ to contest the fine. In response, the government filed a complaint, which incorporated the Notice and Big Bear's answer to the Notice, with the Chief Officer, who assigned an ALJ to preside at the hearing.

The ALJ held that while it was proper to impose a fine on Big Bear for the 135 record-keeping violations, the fine of $200 per violation ($27,000 in total) was excessive. Since an ALJ is permitted to take the "good faith" of the employer into consideration when determining the amount of the sanctions, 8 U.S.C. § 1324a(e)(5), he reduced the fine to $100 per violation ($13,500 in total) based upon his belief that Big Bear had shown substantial good faith throughout the investigation. The ALJ's decision and order were affirmed by the Chief Officer.

## DISCUSSION

### I. *The Record-keeping Requirements of IRCA*

During its inspection of Big Bear's Forms I–9 on September 11, 1987, the INS discovered numerous record-keeping violations of IRCA. In response, it issued a warning citation, the only remedy permitted under the statute for first-time violations occurring between June 1, 1987 and May 31, 1988.[1] Big Bear argues that since

---

1. IRCA specifies the type of action to be taken in response to an employer's violation occurring between June 1, 1987 and May 31, 1988:

[i]n the case of a person or entity, in the first instance in which the Attorney General has reason to believe that the person or entity may have violated subsection (a) of this sec-

a warning citation is the only action that the government may take for a first-time violation, the company was not required, following the warning, to prepare Forms I–9 for the employees covered by the citation. The INS contends that the company was required to correct the violations by preparing the statutorily required Forms I–9 for the employees in question and making those forms available for future government inspections.

■ We hold that the statute imposes a continuing duty on Big Bear to prepare and make Forms I–9 available for all of its employees notwithstanding the fact that it previously received a citation for failing to prepare and maintain a form for some or all of them. A citation is not a license for an employer to ignore the record-keeping provisions of the Act. The statutory and regulatory scheme requires the company to maintain the necessary documents for all covered employees and to make them available for INS inspection for a period of three years. A company's failure to present records regarding its employees at one government inspection does not relieve it of the obligation to present records regarding those same employees at a subsequent date. Big Bear was required to present Forms I–9 for all of its employees at the second INS inspection on December 11, 1987, and its failure to do so constituted a separate and second violation. As set forth in the applicable regulations, where the INS determines that an employer has violated IRCA "for the second time during the citation period," the government can assess administrative penalties. 8 C.F.R. § 274a.9(c). Big Bear's defense, that it was only through an unintentional oversight on the part of its employees that the Forms were not prepared or corrected, does not excuse the violation; it only serves to mitigate the penalty.

Since IRCA imposes a continuing obligation on employers to maintain the requisite paperwork for inspection by the government, Big Bear's failure to present the Forms I–9 on December 11, 1989, constituted an actionable violation of the statute. A fine was appropriate.

## II. *The Constitutional Challenge*
### A. Vagueness

Big Bear also claims that the employment verification provisions of IRCA and the implementing regulations are void because they are unconstitutionally vague. We disagree.

■ The void for vagueness rule "reflects the principle that 'a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" *Roberts v. United States Jaycees*, 468 U.S. 609, 629, 104 S.Ct. 3244, 3256, 82 L.Ed.2d 462 (1984) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed.2d 322 (1926)). A greater degree of ambiguity will be tolerated in statutes which—like the one challenged here—merely impose civil, as opposed to criminal penalties. *See United States v. Doremus*, 888 F.2d 630, 635 (9th Cir.1989). So too, when the statute regulates the conduct of businesses, as the record-keeping provisions of IRCA unquestionably do, the vagueness test is relaxed, because businesses have a greater ability to determine the meaning of legislation in advance of their conduct than do individuals. *Id.* at 634–35.

tion during the subsequent 12–month period, the Attorney General shall provide a citation to the person or entity indicating that such a violation or violations may have occurred and shall not conduct any proceeding, nor issue any order, under this section on the basis of such alleged violation or violations.
8 U.S.C. § 1324a(i)(2). In addition, the implementing regulations state that,
[i]f after investigation the Service determines that a person or entity has violated [IRCA] for

the first time during the citation period (June 1, 1987 through May 31, 1988) the Service shall issue a citation. If after investigation the Service determines that a person or entity has violated [IRCA] for the second time during the citation period or for the first time after May 31, 1988, the proceeding to assess administrative penalties ... is commenced by the Service by issuing a *Notice of Intent to Fine....*
8 C.F.R. § 274a.9(c).

Big Bear argues that the record-keeping provisions of IRCA are void for vagueness because they fail to specify whether an entity served with a citation must take steps to correct the violations listed in the citation or the time period within which the corrective action must be taken. This argument is wrong. The part of the statute that prescribes employers' conduct with respect to record-keeping is not ambiguous—at least not in the respect suggested by Big Bear. As of the effective date of the statute,[2] the company had a clear obligation to create and maintain the necessary records, and to make them available for all INS inspections. The statute also provided that during the June 1, 1987 to May 31, 1988 time period, the company was entitled to receive one warning regarding unlawful conduct before the government could initiate administrative proceedings. However, the company had a continuing duty to comply with the unambiguous statutory requirements during that one-year period. The fact that Big Bear could only receive a citation for an initial violation did not change that elemental fact. That the statute entitles employers to a warning for a first violation is relevant only to the question of the appropriate penalty: it does not render the continuing duty to maintain the necessary records vague or uncertain. Big Bear's vagueness challenge to the record-keeping provisions of IRCA is therefore meritless.

Big Bear suggests no reason, other than the absence of guidelines, for challenging the other provisions of § 1324a on vagueness grounds. There is no constitutional requirement that statutes contain "guidelines." Because Big Bear offers no other basis for its broader vagueness attack, we decline to consider it further.

### B. Due Process

Big Bear also claims that the imposition of a penalty in this case would be "harsh, oppressive and fundamentally un-

fair as to constitute a denial of due process...." It bases its arguments on the facts that (1) the Forms I–9 were not available at the time the employees were initially hired, thus requiring it to fill out the forms at a later date, and (2) its failure to remedy the defects in the records was the result of a good faith mistake rather than an intentional violation. These facts are of no significance to a due process claim. Asking an employer to obtain information regarding an employee at a time subsequent to the date of hiring poses no more substantial a constitutional issue than asking that employer to obtain the information when the employee is first interviewed. Similarly, there is no constitutional barrier to imposing civil penalties for negligence or inadvertent errors. Big Bear's due process arguments are wholly without merit.

### CONCLUSION

The order imposing a fine on Big Bear for violations of the employment verification provisions of IRCA is

AFFIRMED.

---

**2.** The statute provided for a six-month public information period, from December 1, 1986 to May 31, 1987 during which time "the Attorney General shall not conduct any proceeding, nor issue any order, under this section on the basis of any violation alleged to have occurred during the period." 8 U.S.C. § 1324a(i)(1)(B). However, the obligation to maintain records also existed during this time period.