34 F.3d 918
 1994 A.M.C. 2941, 25 Envtl. L. Rep. 20,020
 Clifton B. CRAFT; Jack Dean Ferguson; Donald L. Jernigan;
Michael Patrick King; Thomas D. Stocks; William
Lee Wilson, Plaintiffs-Appellants,
v.
NATIONAL PARK SERVICE; National Oceanic and Atmospheric
Administration; National Marine Fisheries
Service; United States of America,
Defendants-Appellees.
 No. 93-55140.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 8, 1994.
Decided Sept. 12, 1994.
 
 Peter E. Hess, Wilmington, DE, for plaintiffs-appellants.
 Bradley M. Campbell, Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: FLETCHER, CANBY, and HALL, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Clifton Craft, Jack Ferguson, and William Wilson ("appellants") appeal the district court's order affirming the assessment of civil penalties by the National Oceanic and Atmospheric Administration ("NOAA") for violations of the Marine Protection, Research, and Sanctuaries Act. NOAA assessed the penalties following a four week administrative trial, in which appellants were found to have violated NOAA regulations protecting the seabed and historic resources of the Channel Islands National Marine Sanctuary. We have jurisdiction and we affirm.
 
 
 2
 * The Marine Protection, Research, and Sanctuaries Act, 16 U.S.C. Secs. 1431-1445a, provides for the establishment of marine sanctuaries to protect important and sensitive marine areas and resources of national significance. Id. Sec. 1431; S.Rep. No. 595, 100th Cong., 2d Sess. 1 (1988), reprinted in, 1988 U.S.C.C.A.N. 4387. Pursuant to this law, NOAA designated the Channel Islands National Marine Sanctuary ("CINMS") in 1980. The Channel Islands National Marine Sanctuary, 45 Fed.Reg. 65,198 (Oct. 2, 1980). The CINMS includes the marine waters surrounding several islands off the coast of California out to a distance of six nautical miles from the islands. 15 C.F.R. Sec. 935.3.
 
 
 3
 To protect resources within the CINMS, NOAA has promulgated regulations which prohibit activities that might adversely affect sanctuary resources, including hydrocarbon operations, the discharge or deposit of substances, commercial vessel traffic, and the removal or damage of cultural or historical resources. 15 C.F.R. Secs. 935.6 & 935.7. Activities that are not specifically prohibited are permitted. 15 C.F.R. Sec. 935.5.
 
 
 4
 The regulations at issue in this appeal provide, in relevant part:
 
 
 5
 [T]he following activities are prohibited within the Sanctuary ...
 
 
 6
 (2) Alteration of, or construction on, the seabed. Except in connection with the laying of any pipeline as allowed by Sec. 935.6, within 2 nautical miles of any Island, no person shall:
 
 
 7
 (i) Construct any structure other than a navigation aid, or
 
 
 8
 (ii) Drill through the seabed, or(iii) Dredge or otherwise alter the seabed in any way, other than
 
 
 9
 (A) To anchor vessels, or
 
 
 10
 (B) To bottom trawl from a commercial fishing vessel.
 
 
 11
 15 C.F.R. Sec. 935.7(a)(2) (emphasis in original and added). The statute authorizes civil penalties for the violation of these regulations; criminal penalties are not authorized. 16 U.S.C. Sec. 1437 (Supp.1994).
 
 
 12
 Appellants are members of a diving club that took a trip on the boat "Vision" to the CINMS in October 1987. The club members participated in dives at four shipwrecks within the CINMS. Two National Park Service rangers were on board the Vision and witnessed violations of CINMS regulations by members of the diving club. Based on the rangers' testimony and other evidence, NOAA assessed civil penalties against appellants for violations of Sec. 935.7(a)(2)(iii).[1]
 
 
 13
 Following a four week administrative trial, the ALJ concluded that appellants had violated Sec. 935.7(a)(2)(iii) and recommended assessment of the penalties sought by NOAA. The ALJ specifically found that appellants removed artifacts from the shipwrecks and "excavated" the seabed with hammers and chisels. The ALJ found that both Craft and Wilson repeatedly hammered at the seabed and that Ferguson admitted that one site looked like a minefield due to the divers' activities. The ALJ also found that the alteration to the seabed was sufficiently extensive that the sites could be located days after the divers left the site. NOAA adopted the ALJ's findings and recommendations.
 
 
 14
 Appellants subsequently filed an action in district court, challenging NOAA's authority to impose the civil penalties on the grounds that the regulation in question is unconstitutionally overbroad and vague.[2] The district court rejected these contentions and granted the government's motion for summary judgment. Appellants timely appealed.
 
 
 15
 Because appellants raise a legal challenge involving the construction of a federal law and its application to undisputed facts, our review is de novo. United States v. Doremus, 888 F.2d 630, 631 (9th Cir.1989), cert. denied, 498 U.S. 1046, 111 S.Ct. 751, 752, 112 L.Ed.2d 772 (1991).
 
 II
 
 16
 Appellants first argue that the regulation is overbroad. The overbreadth doctrine requires that the enactment reach "a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." United States v. Austin, 902 F.2d 743, 744 (9th Cir.), cert. denied, 498 U.S. 874, 111 S.Ct. 200, 112 L.Ed.2d 161 (1990) (internal quotations omitted); see also Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Because appellants do not claim that any constitutional or fundamental right is prohibited by the regulation in question, their overbreadth challenge must fail. See Austin, 902 F.2d at 744-45 (no overbreadth challenge under Archaeological Resources Protection Act, which prohibits excavation of archaeological resources on public lands).
 
 III
 
 17
 Appellants also argue that 15 C.F.R. Sec. 935.7(a)(2)(iii) is unconstitutionally vague as applied to their activities. Appellants do not raise a facial challenge.
 
 
 18
 "To pass constitutional muster against a vagueness attack, a statute must give a person of ordinary intelligence adequate notice of the conduct it proscribes." United States v. 594,464 Pounds of Salmon, 871 F.2d 824, 829 (9th Cir.1989); see also Austin, 902 F.2d at 745. Thus, a statute's application might violate the constitutional mandate against vagueness if its terms are not sufficiently clear. 594,464 Pounds of Salmon, 871 F.2d at 829.
 
 
 19
 We do not apply this standard mechanically, however. Instead, various factors affect our analysis. The degree of vagueness tolerated by the Constitution depends in part on the nature of the enactment: "[a] statute providing for civil sanctions is reviewed for vagueness with somewhat greater tolerance than one involving criminal penalties" because the consequences of imprecision are less severe. Id. (internal quotations omitted); see also Hoffman Estates, 455 U.S. at 498-99, 102 S.Ct. at 1193-94; Big Bear Super Market No. 3 v. I.N.S., 913 F.2d 754, 757 (9th Cir.1990). In addition, a scienter requirement may mitigate vagueness. Finally, "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights," in which case a more stringent vagueness test applies. Hoffman Estates, 455 U.S. at 499, 102 S.Ct. at 1193-94; Doremus, 888 F.2d at 635.
 
 
 20
 In light of these principles, we conclude that 15 C.F.R. Sec. 935.7(a)(2)(iii) is not unconstitutionally vague as applied to appellants' excavation activities. At the outset, we note that the regulation in question provides only for civil--and not criminal--penalties and does not inhibit the exercise of constitutionally protected conduct. Consequently, the Constitution tolerates a greater degree of vagueness in the regulation.
 
 
 21
 Even more significant, however, is our conclusion that the regulation by its terms clearly prohibits appellants' activities. With two exceptions, the regulation prohibits "dredg[ing] or otherwise alter[ing] the seabed in any way." 15 C.F.R. Sec. 935.7(a)(2)(iii) (emphasis added). The word "alter" extends broadly to activities that "modify" the seabed, see Webster's II New Riverside Universal Dictionary, and the language "in any way" reinforces our understanding that the term "alter" applies to a broad range of conduct. There can be no question but that this language prohibits the excavation activities in which appellants were engaged.[3] E.g., Austin, 902 F.2d at 743-45 (criminal provision that prohibits "excavat[ing], remov[ing], damag[ing], or otherwise alter[ing] or defac[ing] any archaeological resource located on public lands or Indian lands" not unconstitutionally vague as applied to excavation of obsidian weapons and tools); Doremus, 888 F.2d at 635-36 (criminal provision that prohibits "[d]amaging any natural feature or other property of the United States" not unconstitutionally vague as applied to chopping down live trees on Forest Service land).
 
 
 22
 Appellants argue that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." They suggest that because the term "altering" follows the terms "dredging," "construction," and "laying of pipeline," it must be read to proscribe only major industrial and commercial impacts on the seabed.
 
 
 23
 This principle of statutory construction is inapplicable, however, because Sec. 935.7(a)(2)(iii) is not merely a general prohibition preceded by specific illustrative terms. Instead, the regulation includes two specific exceptions to the prohibition on "altering": (1) alterations that occur when anchoring vessels; and (2) bottom trawling from a commercial fishing vessel. 15 C.F.R. Sec. 935.7(a)(2)(iii)(A) & (B). Moreover, contrary to appellants' contentions, the existence of listed exceptions to the prohibition on alterations further suggests that all alterations other than those that are specifically excepted are prohibited.
 
 
 24
 Appellants also rely on NOAA's Final Environmental Impact Statement ("FEIS") to argue that the regulations are unconstitutionally vague. They note that the FEIS discusses Sec. 935.7(a)(2)(iii) only in the context of dredging, an activity that has a major effect on the seabed, and argue that the FEIS, as the only prior agency interpretation of the regulation in question, is entitled to substantial deference under Chevron v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
 
 
 25
 Although appellants are correct that the FEIS discusses Sec. 935.7(a)(2)(iii) only in the context of dredging, appellants' argument is unavailing. As we have previously noted, the regulatory language of Sec. 935.7(a)(2)(iii) broadly prohibits alterations "of any kind." Even if NOAA did not originally consider whether this regulation would apply to activities such as hammering at the seabed, the regulatory language is sufficiently broad to provide fair warning to the public that such activities are prohibited. See Hoffman Estates, 455 U.S. at 498, 102 S.Ct. at 1193; Doremus, 888 F.2d at 635.
 
 
 26
 Moreover, the FEIS is not a definitive agency interpretation of the scope of the regulations in question. Instead, an FEIS is intended to be a detailed statement of the significant environmental effects of the regulation. E.g., Sierra Club v. Clark, 774 F.2d 1406, 1411 (9th Cir.1985). Its purpose is to provide the agency with sufficiently detailed information to enable it to decide whether to proceed on a project in light of potential environmental consequences and to inform the public of the potential environmental impacts of the proposed enactment. Id. Because the FEIS is not intended to provide the public with a definitive statement of all activities that might fall within the regulation's prohibitions, its terms do not limit our construction of the regulation.
 
 
 27
 As a final matter, there can be no doubt that appellants were aware that their activities were prohibited. The ALJ found that Ferguson announced to the group of divers that the shipwrecks were located in a federal reserve and were protected. At one of the shipwrecks Ferguson announced that removing objects from the site was illegal and that an underwater alarm would alert the group if a National Park Service patrol approached. The ALJ concluded that appellants "set out with their picks, hammers ... and other wreck raiding paraphernalia, fully intending to remove objects from these wrecks in the closed area within the Sanctuary, and that is what they did." Given these undisputed facts, appellants' claims that they lacked fair warning that their actions were prohibited ring hollow. See United States v. Ellen, 961 F.2d 462, 467 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 217, 121 L.Ed.2d 155 (1992); United States v. Clinical Leasing Serv., 925 F.2d 120, 123 (5th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991).
 
 IV
 
 28
 We hold that Sec. 935.7(a)(2)(iii) is neither overbroad nor unconstitutionally vague as applied to appellants' conduct. The order of the district court is AFFIRMED.
 
 
 
 [1]
 Penalties were also assessed against appellants Ferguson and Wilson pursuant to 15 C.F.R. Sec. 935.7(a)(5), which prohibits any person from "remov[ing] or damag[ing] any historical or cultural resource." Section 935.7(a)(5) also served as the sole basis for assessing penalties against plaintiff-appellants Michael King, Thomas Stocks, and Donald Jernigan. Appellants do not challenge the constitutionality of Sec. 935.7(a)(5) on appeal to this court
 
 
 [2]
 Appellants also argued that they have a pre-existing right to perform salvage activities in the CINMS and that the regulations impermissibly restrict their rights under admiralty law principles to engage in the underlying activities. These claims were rejected by the district court
 
 
 [3]
 Appellants' attempts to characterize their activities as minimally harmful fanning of sediment and manual hammering are misleading. As noted above, the ALJ found that appellants' hammering and chiseling activities were "excavations" that resulted in identifiable scars on the seabed. These factual findings have not been challenged on appeal