**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernest L. BRUNSKILL and Evelyn B.
Brunskill, Defendants-Appellants.**

No. 85–1806.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 1986.

Decided June 24, 1986.

Arthur E. Gowran, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

James S. Burling, Pacific Legal Foundation, Sacramento, Cal., for defendants-appellants.

Before SCHROEDER, CANBY, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

This appeal involves a conflict between rights to prospect and develop mineral resources on public lands and the powers and duties of the United States Forest Service to manage the surface resources of the National Forests. 30 U.S.C. §§ 21–54 (1982); 16 U.S.C. §§ 478 and 551 (1982). We recognize that the important interest in developing mineral resources on public lands under the mining law may come into conflict with the equally important interest of protecting our National Forests for future use. *See United States v. Weiss,* 642 F.2d 296, 299 (9th Cir.1981).

At issue in this case is the district court order directing the Brunskills to remove at their expense a cabin, a mill, and other structures from their millsite on Forest Service land and to pay the United States $1,000 to restore the land to its natural state. We affirm the district court order, but on the limited grounds that the Brunskills do not have an approved plan of operations as required by 36 C.F.R. Part 228 (1985). We do not pass on whether the Forest Service has the authority to reject a plan of operations or whether the mining claims at issue are valid.

## I. FACTS

In 1959, Ernest and Evelyn Brunskill (Brunskills) purchased the Glad Acres mining claim in Tuolumne County, California. They later purchased the adjacent H.E. and Hilda E. claims. The Department of the Interior declared the Glad Acres claim invalid in 1979, and the district court and this court affirmed.

During appeal of the Glad Acres decision, the Brunskills located the Judy Lynn millsite and the Brunskills' daughter and son-in-law located the Jerod Austin placer mining claim. The Judy Lynn millsite covers the area that was determined to lack mineral character in the Glad Acres proceeding. The Jerod Austin claim is based on an alleged new mineral discovery and overlaps a portion of the old Glad Acres claim plus approximately five acres of new ground. The Brunskills maintain a cabin, an uncompleted mill building, tool shed, shower, and outhouse on the millsite.

On August 9, 1982, the United States filed a complaint against the Brunskills requesting among other things a mandatory injunction requiring the Brunskills to vacate immediately the land they occupy, remove all improvements and personal property, and restore the land to its natural state.

During the pendency of the case, the Brunskills submitted to the Forest Service a notice of intent to commence mining operations on the Jerod Austin and Hilda E. mining claims as well as the Judy Lynn millsite. The Forest Service rejected the Brunskills' plan of operations for mining but approved further prospecting. The Forest Service rejected the plan because "the claim [on which the Brunskills were] proposing to conduct mineral activity ... was a claim that had been declared null and void, and on that basis it was no longer available for mineral development, at least under that claim." Further, the proposed plan did not provide sufficient data and information as required by 36 C.F.R. § 228.

On April 19, 1984, the Forest Service approved a limited plan to permit the Brunskills to sample the Jerod Austin and Hilda E. claims for ninety days. The Forest Service extended that plan until August 15, 1984, when it expired. A Forest Service letter dated May 9, 1984, had

> reaffirm[ed] the Forest Service's position regarding structures located on [the Brunskills'] claims, with the temporary exception of the mill building and storage shed as provided for in the Plan of Operation.... The maintenance and use of the cabin and other structures on the claim are not authorized. Such structures are in trespass. Continued maintenance, occupancy, and the use of the structure are subject to appropriate charges for rental and damages.

Following trial, the district court found that the cabin, mill, and other structures were not justified because the mining claims associated with the millsite were not valid and the Brunskills had no operating plan as required by 36 C.F.R. Part 228. The district court ordered the Brunskills to remove the cabin and mill at their own expense within one year[1] and to pay the government $1,000 to restore the land to its natural state. The court further found that the government was not entitled to damages.

## II. DISCUSSION

The district court found that the Brunskills are required to have an approved operating plan for their cabin, mill, and other structures because each of those structures constitutes a surface disturbance within the meaning of 36 C.F.R. Part 228. The Brunskills contend that an operating plan is not required and that, in any event, at the time of trial, they had an existing operating plan.

■ Whether a plan of operation is required is a question of law that we review de novo. Whether the Brunskills in fact had an approved plan, however, is a question of fact we review for clear error. *United States v. McConney*, 728 F.2d 1195, 1202–04 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The Forest Service promulgated regulations for the purpose of setting "forth rules and procedures through which use of the surface of National Forest System lands in connection with operations authorized by the United States mining laws (30 U.S.C. [§§] 21–54), ... shall be conducted so as to minimize adverse environmental impacts on National Forest System surface resources." 36 C.F.R. § 228.1.

Section 228.4(a) provides that "a notice of intention to operate is required from any person proposing to conduct operations which might cause disturbance of surface resources." Such notice must be filed with the District Ranger having jurisdiction over the area where the proposed operations will occur. Where the "District Ranger determines that such operations will likely cause significant disturbance of surface resources, the operator shall submit a proposed plan of operations to the District Ranger." *Id.* Mining activities likely to cause such disturbance cannot be carried on in the absence of an approved operating plan. See *United States v. Goldfield Deep Mines Co. of Nevada*, 644 F.2d 1307 (9th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 455 (1982).

Section 228.10 provides that, unless otherwise agreed to by the authorized officer, an operator shall remove, within a reasonable time after the cessation of operations, all structures, equipment, and other facilities and clean up the site of operations. Further, "[o]ther than seasonally, where operations have ceased temporarily, an operator shall file a statement with the District Ranger which includes: (a) [v]erification of intent to maintain the structures, equipment and other facilities, (b) the expected reopening date, and (c) an estimate of extended duration of operations." Filing of such a statement is required every year if operations are not resumed. Operations include:

All functions, work, and activities in connection with prospecting, exploration, development, mining or processing of mineral resources and all uses reasonably incident thereto, including roads and other means of access on lands subject to the regulations in this part, regardless of whether said operations take place on or off mining claims.

36 C.F.R. § 228.3(a).

■ The Brunskills contend that because 36 C.F.R. § 228.10 does not require a plan of operations when operations have ceased, they are not in violation of 36 C.F.R. Part 228. They offer no proof, however, that they have either ceased operations or that as required by section 228.10 they have

---

**1.** Should the Brunskills fail to remove the structures, the district court gave the government permission to remove the structures and assess the Brunskills costs.

filed a statement with the District Ranger that operations have ceased temporarily. More importantly, they never secured approval of an operating plan for placing or maintaining the structures on the land. The Brunskills' cabin, mill, and other structures are significant surface disturbances within the scope of 36 C.F.R. Part 228 and the district court did not err in determining that 36 C.F.R. Part 228 required the Brunskills to have an approved operating plan.

 Turning to whether the Brunskills in fact have an approved plan of operation, the district court in its Undisputed Findings of Fact found that the Brunskills submitted a notice of intent of mining operations for the Jerod Austin and Hilda E. claims and for the Judy Lynn millsite on October 27, 1983. The Forest Service rejected the Brunskills' plan of operation. The Brunskills did not appeal the Forest Service's rejection of their proposed operating plan under the provisions of 36 C.F.R. § 228.14. We therefore do not have before us the question of whether the Forest Service had the power to reject the plan[2] or whether its reason for doing so was valid.

What is clear is that the Brunskills never obtained an approved plan authorizing maintenance of the structures. In its Disputed Findings of Fact, the district court found that the Brunskills "had not received an approved operating plan...."

The Brunskills make one additional argument for their assertion that they have a plan of operations. "By agreement of the parties, [the Forest Service] permitted [the Brunskills] to use the mill to process ore samples while prospecting pursuant to a plan to prospect for gold, approved by [the Forest Service]." The prospecting plan expired August 15, 1984. The same plan also provided for restoration and stabilization of the millsite. That portion of the plan is still in effect. Although the Brunskills have a current obligation for restoration, they do not have an approved operating

plan for either the continued existence or use of their cabin and mill building.

The district court thus did not clearly err in finding that the Brunskills failed to have an approved operating plan. Based on this finding, we affirm the district court's order requiring removal of the unauthorized structures.

AFFIRMED.

---

**2.** See Wilkinson & Anderson, "Land and Resource Planning in the National Forests," 64 Ore.L.Rev. 1, 259–60 (1985).