UNITED STATES of America, Plaintiff,

v.

Ronald L. NORDWICK, Defendant.

No. CR 87–4–BU–CCL.

United States District Court,
D. Montana,
Butte Division.

Aug. 14, 1987.

Kris A. McLean, Assistant U.S. Atty., Butte, Mont., for plaintiff.

Ronald L. Nordwick, pro se.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT

LOVELL, District Judge.

Ronald L. Nordwick was charged with "constructing or maintaining structures or other improvements on National Forest System lands ... without an approved operating plan" in violation of 36 C.F.R. § 261.10(a) (1986). Defendant refused to consent to proceed before the United States Magistrate and the case was transferred to the United States District Court for the District of Montana.

The United States then filed an information charging:

That from on or about the 29th day of July, 1986, and continuing on or about the 12th day of November, 1986, in the State and District of Montana, Ronald L. Nordwick did maintain structures, enclosures, and other improvements on the Mountain Queen Mine claims in Township 4 N., Range 5W., Section 26, Jefferson Ranger District, Deer Lodge National Forest, without an approved operating plan, in violation of 36 CFR § 261.10(a).

Defendant was arraigned before the undersigned on this information. The court declined to appoint counsel for Defendant finding him to be financially able to provide his own attorney. Pretrial motions were heard and decided. The case was tried before the court without a jury. Defendant did a creditable job of trying his case and testified on his own behalf. Having taken the matter under advisement the court now makes and enters the following findings of fact, conclusions of law, and judgment.

## I. FINDINGS OF FACT

1. On January 19, 1984 Defendant notified the United States Forest Service he intended to engage in mining operations, including trenching, backfilling and tree cutting, on the Mountain Queen Mining Claim located at Township 4 N., Range 5 W., Sections 9–36 including Section 26, Jefferson Range District, Deer Lodge National Forest.

2. The above described Mountain Queen Mining Claim contitutes an unpatented mining claim to which Defendant owns no surface rights.

3. Due to the size of the area to be explored, the probable use of mechanized equipment, and the likelihood of substantial surface disturbance, the Jefferson Range District Minerals Staff determined that a Plan of Operations and a $500.00 Reclamation/Performance Bond should be submitted by Defendant prior to mining operations.

4. The United States Forest Service advised Defendant of the required Plan of Operations and Performance Bond by letter from District Ranger, Roger M. Siemens, dated February 16, 1984.

5. Defendant was readvised of the required Plan of Operations and Performance Bond by letters dated August 4, 1986 and August 18, 1986.

6. The August 4, 1986 letter advised Defendant that "any activity by an operator which might cause significant surface resource disturbance must be conducted according to a Plan of Operation approved by the Forest Officer. Your cabins, outbuildings, and mining activities on the Queen Mine properties (T4N, R5W, Section 26) must be covered by such a Plan of Operation. In order for these structures to be authorized under a Plan, you must be able to show a reasonable necessity resulting from planned prospecting, exploration, or mining activities."

7. The August 18, 1986 letter reminded Defendant that he had not yet complied with the Forest Service's regulations, requested Defendant's cooperation, and invited Defendant to contact Forest Service officers if he needed assistance. Defendant did not personally receive this letter because his wife returned it to Roger Siemens, its author, with a note indicating

that, as Mr. Siemens knew, Defendant was out of the state working.

8. Photographs taken by Mr. Larry Boster, a United States Forest Service Civil Engineering Technician, at the Mountain Queen Mining Claims on August 6, 1986 show the following: two cabins used for residential purposes, a storage shed, an outhouse, various lounge chairs, car hoods, garbage and debris, a wood stove with open chimney, a kitchen type electric or propane range, an electric refrigerator standing next to the storage shed, a stripped down electric dryer, stacks of used window frames, a yellow pickup truck with no tires, and a light green passenger car on blocks with the tires removed.

9. Defendant admits in his testimony by affidavit that "there are several buildings on these claims ... which have been used as residence and storage for mining purposes only on a regular basis by myself ... and others before me, for many, many years."

10. On August 26, 1986, Defendant informed Mr. Larry Boster that he would not file a Plan of Operations for the Mountain Queen Mining Claims.

11. On September 10, 1986, at a meeting convened to help Defendant file a Plan of Operations, Defendant informed several Forest Service officials that he would not file a Plan of Operations for the Mountain Queen Mining Claims, but advised them that he had policed the area.

12. Defendant informed Larry Boster, during the first week of September, 1986, and Roger Siemens, on October 20, 1986, and other Forest Service employees that he is not "operating" the Mountain Queen Mine, except for occasional hand tool work.

13. As of the date of trial, Defendant had not filed a Plan of Operations for the Mountain Queen Mining Operations.

14. An inspection of the site on approximately April 15, 1987 revealed the Mountain Queen Mining Claim site to be in the same or similar condition as August 6, 1986.

## II. CONCLUSIONS OF LAW

Title 16 of the United States Code, entitled "Conservation," empowers the Secretary of Agriculture to promulgate rules and regulations to protect national forests from destruction by fire or depredations, and to insure the objects of the national forests by regulating occupancy and use. 16 U.S.C.S. §§ 472, 551 (Law.Co-op.1978). Section 551 provides for criminal penalties, including a fine of not more than $500 and/or imprisonment of not more than six months for violations of these rules and regulations. The regulations promulgated in response to these statutes apply to certain mining and prospecting activities, notwithstanding the provisions of the Mining Laws of 1872 which seek to promote and encourage legitimate exploration and mining. *United States v. Brunskill*, 792 F.2d 938 (9th Cir.1986); *United States v. Weiss*, 642 F.2d 296 (9th Cir.1981). Pursuant to this authority the Secretary established valid surface use restrictions which permissibly regulate, but do not preclude, operations conducted under 1872 Mining Laws. *United States v. Brunskill*, 36 C.F.R. §§ 261.1(b), 228.1—.2 (1986) [hereinafter cited by section number only].

The following is a summary of the applicable regulations.

1. The purpose of the rules and procedures regulating surface use of the National Forests is to minimize adverse environmental impacts on National Forest surface resources which may occur as a result of entry upon public lands to search for minerals. § 228.1.

2. It is unlawful to construct, place, or maintain any kind of structure, enclosure, or other improvement on National Forest land without an approved operating plan. § 261.10.

3. Certain Forest Service officers, including a District Ranger, are authorized to approve operating plans in accordance with authority granted in 36 C.F.R. Part 228. § 261.1a.

4. The prohibitions regarding use and occupancy apply to acts occurring within the National Forest System, except as otherwise provided. § 261.1

An operator is required to submit a notice of intent and a plan of operations in

the following circumstances. An operator must file a notice of intent when "proposing to conduct operations which might cause disturbance of surface resources." § 228.4(a). Operations are defined as "[a]ll functions, work, and activities in connection with prospecting, exploration, development mining or processing of mineral resources." § 228.3(a). "If the District Ranger determines that [operations proposed in the notice of intent] will likely cause significant disturbance of surface resources "The operator is required to advance to the next step and file a plan of operations. § 228.4.

An operator need not file a notice of intent (nor, consequently, a plan of operations):

(1) when operations will be limited to:
   (i) "use of vehicles on existing public roads,"
   (ii) "individuals desiring to search for and occasionally remove small mineral samples or specimens,"
   (iii) "prospecting or sampling which will not cause significant resource disturbance and will not involve removal of more than a reasonable amount of mineral deposit for analysis and study,"
   (iv) "marking and monumenting a mining claim," and
   (v) "subsurface operations which will not cause significant surface resource disturbance" 228.4(a)(2)(ii); 228.-4(a)(1)(i)(v); or

(2) "for operations which will not involve the use of mechanized earth-moving equipment such as bulldozers or backhoes and will not involve the cutting of trees," 228.4(a)(2)(iii).

■ Here Defendant's notice of intent clearly stated he proposed to trench and backfill, presumably with motorized equipment, and cut trees to access prospecting sites. No evidence of record indicates that Defendant ever engaged in the activity proposed which compels a miner to file a notice of intent. In fact, it is clear Defendant withdrew his notice of intent, implicitly, by failing to carry out that proposed design, and, explicitly, by repeatedly advising Forest Service officers that he was not "oper-ating" the Mountain Queen Mine except for limited work with hand tools. Having withdrawn his notice of intent, Defendant was not required at the outset to follow through the process to the next step—filing a plan of operations.

■ However, Defendant's conduct at the Mountain Queen Mine was not blameless. Although not required to file a plan of operations based on his 1984 notice of intent, Defendant was required to file a plan of operations once the Forest Service determined that Defendant was not complying with Forest Service regulations on environmental protection.

Forest Service officers are authorized to inspect operations to check compliance with regulations. § 228.7(a). If an operator's noncompliance "unnecessarily or unreasonably caus[es] injury, loss or damage to surface resources," the officer shall notify the operator, in person or by certified mail, of the noncompliance "and shall specify the action to comply and the time within which such action is to be completed." § 228.7(a).

Defendant failed to comply with regulations regarding removal or disposal of garbage and refused "to minimize, so far as is practicable, its impact on the environment and the forest surface resources." § 228.8(c). Defendant also failed to attempt to harmonize his operation with scenic values as required. § 228.8(d). Finally, Defendant failed to "maintain his structures, equipment, and other facilities in a safe, neat, and workmanlike manner. § 228.9.

The certified letter dated August 4, 1986, (Government's Exhibit 5) informed Defendant that activity resulting in a significant surface resource disturbance "must be conducted according to a Plan of Operations." The letter notes:

Your cabins, outbuildings, and mining activities on the Queen Mine properties (T4N, R5W, Section 26) must be covered by such a Plan of Operation. In order for these structures to be authorized under a Plan, you must be able to show a reasonable necessity resulting from planned prospecting, exploration, or mining activities. We are requesting at this time that you file a complete Plan of

Operations with this office by August 15, 1986.

From statements in his affidavit it is clear that Defendant knew the Forest Service was concerned with the buildings as well as the refuse and debris collected on the claim. The August 4, 1986 letter adequately describes the noncompliance, and specifies the required action (submitting a plan of operations) and the time allowed to complete that action. *See* § 228.8(b). After receiving this letter, it is certain that Defendant was required to file a plan of operations and he did not.

Ronald Nordwick is adjudged guilty of maintaining structures and failing to submit a plan of operations in violation of 36 C.F.R. § 261.10(a).

Sentencing is set for September 15, 1987 at 1:15 p.m., in the courtroom of the United States District Court, Helena, Montana.

If Defendant intends to avoid serving time in jail he would be well advised to clean up his premises to the satisfaction of the Forest Service and otherwise comply with the law prior to sentencing.

The clerk is directed to forthwith notify the parties of the making and entry of this order.