**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

MICHAEL BACKLUND,
             *Defendant-Appellant.*

No. 10-30264

D.C. No.
3:09-cr-00477-
MO-1

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

DAVID D. EVERIST,
             *Defendant-Appellant.*

No. 10-30289

D.C. No.
3:09-cr-00479-
MO-1

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
PANEL
REHEARING AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
November 15, 2011—Portland, Oregon

Filed April 26, 2012
Amended July 31, 2012

8565

Before: Raymond C. Fisher, Richard A. Paez and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Fisher

## COUNSEL

James L. Buchal, Murphy & Buchal LLP, Portland, Oregon, for appellant Michael Backlund.

Steven J. Sherlag, Portland, Oregon, for appellant David Everist.

Dwight C. Holton, United States Attorney; Neil J. Evans (argued), Assistant U.S. Attorney, Portland, Oregon; Ignacia S. Moreno, Assistant Attorney General; Allen M. Brabender, Washington, DC, for the appellee.

## ORDER

The opinion filed April 26, 2012 and appearing at 677 F.3d 930 (9th Cir. 2012), is **AMENDED** as follows:

1.  At page 4441 of the slip opinion (677 F.3d at 944), the following sentence is deleted:

    > The government, however, can mitigate this potential for delay by promptly initiating enforcement actions and defending the agency decision in those proceedings.

    and replaced with:

    > The government, however, can mitigate this potential for delay by promptly initiating judicial proceedings and defending the agency decision in those proceedings.

2.  At page 4441 of the slip opinion (677 F.3d at 944), the following footnote is inserted as footnote 15 following the sentence that reads, "Accordingly, we conclude that the district court erred by barring Backlund from presenting his APA challenge as a defense to the alleged violation of 36 C.F.R. § 261.10(b).":

    > To be clear, we do not hold that proving the correctness or even the existence of the

agency action was an element of the government's criminal case against Backlund. Backlund does not argue that it was. The lawfulness of the agency action was, however, relevant to Backlund's affirmative defense that his residency was authorized.

3.  At page 4441 of the slip opinion (677 F.3d at 944), the following footnote is inserted as footnote 16 following the sentence that reads, "The government did not argue that the district court's error was harmless.":

> In a petition for panel rehearing, the government argues for the first time that any error was harmless because even if Backlund had succeeded in convincing the district court that the Forest Service decision was arbitrary and capricious, the district court's decision would not legitimize Backlund's residency, which would remain unauthorized — and therefore unlawful — until the Forest Service approved Backlund's proposed plan of operations. The government's argument largely misses the point. Backlund's theory is that withholding authorization for year round residency on the Climax claims amounts to a "material interfer[ence] with . . . mining[,]" 30 U.S.C. § 612(b), because the prohibition makes it financially impossible for him to mine his claims. Backlund argued that the Forest Service's decision "so unreasonably circumscribed" his mining operation "as to amount to a prohibition," and therefore violated the mining laws. *United States v. Weiss*, 642 F.2d 296, 299 (9th Cir. 1981). We express no opinion on the merits of

　　　　Backlund's claim and leave it to the district
　　　　court to evaluate in the first instance.

　　With these amendments, the petition for panel rehearing, filed June 11, 2012 in Case No. 10-30264, is **DENIED**.

　　An amended opinion is filed concurrently with this order. No further petitions for rehearing will be accepted.

---

## OPINION

FISHER, Circuit Judge:

　　Federal law permits mining operations and uses reasonably incident thereto on National Forest System lands. Individuals mining in the national forests must comply with regulations promulgated by the United States Department of Agriculture. Under those rules, mining operations that are likely to cause significant surface disturbance require a plan of operations approved by the United States Forest Service. In addition, long-term residency on a claim site requires Forest Service authorization, either in the form of an approved plan of operations (for residency incident to mining), or a special use authorization.

　　The defendants in these two cases, Michael Backlund and David Everist, contend that they were engaged in bona fide mining activities on National Forest System lands, which justified full-time residency on their respective claim sites.[1] In separate administrative proceedings, however, the Forest Service determined that Backlund's and Everist's residences

---

　　[1]For purposes of oral argument only, we consolidated these two appeals and three other cases involving similar issues. *See United States v. Needles*, No. 10-30300; *United States v. Ames*, No. 10-30283; *United States v. Fournier*, No. 10-30285. We address *Needles*, *Ames* and *Fournier* in concurrently filed memorandum dispositions.

were not reasonably incident to qualifying mining operations, and therefore were not authorized by the mining laws. Nor did either of them possess a special use authorization. The Forest Service informed Backlund and Everist of its determinations and instructed them to cease residing on National Forest System lands. When they failed to depart, the government prosecuted them under 36 C.F.R. § 261.10(b), which prohibits "[c]onstruction, reconstructing, improving, maintaining, occupying or using a residence on National Forest System lands unless authorized by special-use authorization or approved operating plan when such authorization is required." They appeal their respective convictions on three grounds: (1) that the Forest Service exceeded its authority by regulating residency on mining claims; (2) that 36 C.F.R. § 261.10(b) is unconstitutionally vague; and (3) that the district court denied them due process by precluding them from challenging the Forest Service's administrative determinations that their residences were not reasonably incident to mining.

We hold that the United States Forest Service may regulate residential occupancy of bona fide mining claims within the national forests, and that § 261.10(b) is consistent with the mining laws and not unconstitutionally vague. We further hold that in a criminal proceeding predicated on the Forest Service's administrative determination, a defendant may obtain judicial review of the agency action under the Administrative Procedure Act (APA), so long as the defendant complied with the procedural requirements for direct review and the APA's statute of limitations has not expired. Thus, Everist was not entitled to judicial review of the Forest Service's determination that his residency was not reasonably incident to mining, because he did not exhaust his administrative remedies as required by the APA. Backlund, on the other hand, did administratively exhaust his claim that the Forest Service's denial of his proposed plan of operations was not in accordance with law. He was, therefore, entitled to judicial review of the agency decision in the context of his criminal

prosecution. Accordingly, we affirm Everist's conviction, and reverse Backlund's conviction.

## STATUTORY AND REGULATORY BACKGROUND

This case involves the interplay between federal statutes relating to mining on public lands and management of the national forests. Under the Mining Law of 1872, an individual who discovers a valuable mineral deposit on federal land may locate a mining claim.[2] The statute provides that so long as the claimant complies with federal, state and local law, he shall have "exclusive right of possession and enjoyment of all the surface included within the lines of [his] locations." 30 U.S.C. § 26. This right is subject to certain limitations.

First, under the Multiple Use Act of 1955 "[a]ny [unpatented] mining claim hereafter located . . . shall not be used . . . for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto." 30 U.S.C. § 612(a). "An 'unpatented' claim is a possessory interest in a particular area solely for the purpose of mining; it may be contested by the government or a private party." *Clouser v. Espy*, 42 F.3d 1522, 1525 n.2 (9th Cir. 1994).[3] The act also "reserve[s] to the United States the right to manage and dispose of surface resources on unpatented mining claims," *United States v. Doremus*, 888 F.2d 630, 632 (9th Cir. 1989), with the caveat that the government's use shall not "endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto," 30 U.S.C. § 612(b). Thus, under the mining laws, use of an unpatented

---

[2]Location "involve[s] staking the corners of the claim, posting a notice of location thereon and complying with the state laws concerning the filing or recording of the claim in the appropriate office." *United States v. Curtis-Nev. Mines, Inc.*, 611 F.2d 1277, 1281 (9th Cir. 1980).

[3]"By contrast, if a claim is patented, the claimant gets a fee simple interest from the United States and no contest can be brought against the claim." *Clouser*, 42 F.3d at 1525 n.2. The claims at issue here are unpatented.

mining claim on public land is limited to activities that are reasonably incident to prospecting, mining and processing operations, and subject to the right of the United States to manage surface resources. *See United States v. Curtis-Nev. Mines, Inc.*, 611 F.2d 1277, 1281, 1283 (9th Cir. 1980).

Second, under the Organic Administration Act of 1897, mining operations on National Forest System lands are subject to rules and regulations promulgated by the Secretary of Agriculture for the protection and preservation of the national forests. *See* 16 U.S.C. § 551.[4] The act recognizes "prospecting, locating, and developing the mineral resources" of the national forests as "proper and lawful" uses of National Forest System lands, but individuals engaged in those activities, "must comply with the rules and regulations covering [the] national forests." 16 U.S.C. § 478. *See United States v. Weiss*, 642 F.2d 296, 298 (9th Cir. 1981). Under these rules, depending on the type and scope of the activity at issue, different requirements apply.

---

[4]16 U.S.C. § 551 provides,

> The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside under the provisions of section 471 of this title, and which may be continued; and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; and any violation of the provisions of this section, sections 473 to 478 and 479 to 482 of this title or such rules and regulations shall be punished by a fine of not more than $500 or imprisonment for not more than six months, or both. Any person charged with the violation of such rules and regulations may be tried and sentenced by any United States magistrate judge specially designated for that purpose by the court by which he was appointed, in the same manner and subject to the same conditions as provided for in section 3401 (b) to (e) of title 18.

The rules set forth at 36 C.F.R. part 228, subpart A, cover mining operations and uses reasonably incident thereto on National Forest System lands. Under these rules, mining operations that will likely cause, or are causing, significant surface disturbance must be covered by an approved operating plan issued by the Forest Service.[5] *See* 36 C.F.R. § 228.4(a)(4).[6] Mining operations that are not likely to cause significant surface disturbance do not require an approved operating plan. *See id.* § 228.4(a)(1), (3); 73 Fed. Reg. 65,984, 65,988 (Nov. 6, 2008). Most uses of National Forest System lands not related to mining are "special uses," which require special use authorization under § 251.50(a).[7]

---

[5]The United States Forest Service is an agency of the Department of Agriculture with primary responsibility for managing the national forests.

[6]36 C.F.R. § 228.4(a)(4) provides,

> If the District Ranger determines that any operation is causing or will likely cause significant disturbance of surface resources, the District Ranger shall notify the operator that the operator must submit a proposed plan of operations for approval and that the operations can not be conducted until a plan of operations is approved.

[7] 36 C.F.R. § 251.50(a) provides,

> All uses of National Forest System lands, improvements, and resources, except those authorized by the regulations governing sharing use of roads (§ 212.9); grazing and livestock use (part 222); the sale and disposal of timber and special forest products, such as greens, mushrooms, and medicinal plants (part 223); and minerals (part 228) are designated "special uses." Before conducting a special use, individuals or entities must submit a proposal to the authorized officer and must obtain a special use authorization from the authorized officer, unless that requirement is waived by paragraphs (c) through (e)(3) of this section.

The parties do not contend that any of the waivers listed in paragraphs (c) through (e)(3) apply here.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Michael Backlund

Michael and Linda Backlund own the Climax mining claims in Oregon's Umpqua National Forest. In 2001, the Backlunds' partner submitted to the Forest Service a proposed plan of operations for the claims. As part of the Forest Service's review of the proposal, two Forest Service examiners prepared a Surface Use Determination (SUD) Report, which evaluated "whether or not the ongoing use of the structures [on the Climax claims] was reasonably incident and necessary for mining related activities." In their December 2004 report, the examiners concluded that "year round occupation of the permanent camp trailer with the added room, roof, porch and fire wood storage area, is excessive even during the mining season," and that "such use is not reasonable or necessary." They recommended that the Forest Service "[d]eny the request for ongoing and exclusive year-round use of the existing permanent camper trailer structure for sleeping and cooking by the operators and require the removal of the structure from National Forest System lands." They further recommended that the Forest Service approve "temporary travel trailers to accommodate overnight sleeping needs during the period of active mining operations and require their removal during the non-mining season."

Rather than continue to negotiate the 2001 proposed plan of operations, the Backlunds in 2005 informed the Forest Service that they believed their mining activities did not require a plan of operations because their operation was not causing a significant surface disturbance. The Forest Service disagreed, and in January 2006 District Ranger Deborah Schmidt issued a notice of noncompliance, informing the Backlunds that their ongoing occupancy of national forest land without an approved plan of operations violated Forest Service regulations. She noted that she had informed the Backlunds on four separate occasions in 2005 that their mining activities

required an approved plan of operations, and that they had not submitted a proposed plan. Schmidt cited two reasons for requiring a plan of operations: that the Backlunds were maintaining "[m]ining equipment and structures . . . on the claim-site [amounting to] a significant disturbance of surface resources," and that they intended to reside on the claims in a travel trailer. She explained that the Backlunds needed to submit a plan of operations to "determine whether or not [their] occupancy [was] reasonably incident to [their] mining operation and to determine proper mitigation." She instructed the Backlunds to remove all structures, equipment and facilities by May 1, 2006.

The Backlunds appealed the notice of noncompliance. In April 2006, the Acting Forest Supervisor affirmed Schmidt's finding of noncompliance. In the decision, he explained that the Backlunds had 15 days to appeal to the Regional Forester under 36 C.F.R. § 251.87. The Backlunds did not appeal.

The Backlunds submitted a proposed plan of operations in April 2006 and again around May 2007. Several field inspections and meetings with the Backlunds revealed that their mining operation had not changed appreciably since the 2004 SUD Report. In June 2007, Schmidt concluded that year-round residency on the Climax claims was not reasonably necessary. She agreed to approve a plan of operations that would allow for "temporary seasonal residential occupancy" only.

The Backlunds appealed the decision, arguing that their residence was reasonably incident to their mining operation because they mined year round and needed to reside on site to protect their claim. They also argued that the Forest Service lacked authority to regulate residency on mining claims. The Forest Supervisor denied their first level appeal, and they filed a second level appeal. In December 2007, the Deputy Regional Forester agreed that year-round residential occupancy was not reasonable or necessary to the Backlunds' min-

ing operation and denied the Backlunds' appeal. She noted that her decision constituted the agency's final administrative decision and was not subject to further administrative review. The Backlunds did not seek judicial review of the decision.

The Forest Service notified the Backlunds by letter in March and May 2008 that their continued "maintenance and full time residential occupancy of the structures and improvements on the Climax claims remain[ed] in non-compliance" with Forest Service regulations. Nevertheless, the Backlunds continued to reside on the claims. In December 2009, the government filed a misdemeanor information in the United States District Court for the District of Oregon, charging the Backlunds with unlawfully maintaining, occupying and using a residence on National Forest System lands, in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10(b).

In a motion to dismiss, the Backlunds argued that (1) 36 C.F.R. part 261 did not apply to mining operations; (2) 36 C.F.R. § 261.10(b), as applied to the Backlunds, was unconstitutionally vague; and (3) they were entitled to contest the Forest Service's refusal to authorize year-round residency on their mining claims. At a pretrial conference, the district court rejected these arguments. The court also precluded the Backlunds from challenging the merits of the administrative decision as an affirmative defense at trial, concluding that such a challenge would be an impermissible collateral attack on the agency decision.

Mr. Backlund pled guilty to violating 36 C.F.R. § 261.10(b), pursuant to a plea agreement. Backlund admitted that he maintained a residence on National Forest System land without Forest Service authorization. Under the plea agreement, he agreed to remove all structures and personal property from the Climax mining claims within 30 days, and the government dropped the criminal charges against Mrs. Backlund. The plea agreement preserved Backlund's right to appeal the district court's pretrial rulings. The court sentenced him to

one year of bench probation and payment of a $700 fine. Backlund timely appealed.

## II. David Everist

David Everist owns the Twin Cedars mining claim in Oregon's Siskiyou-Rouge National Forest. Everist filed a notice of location for this claim in 2006. In May 2009, District Ranger Linda Duffy asked Kevin Johnson, a Forest Service minerals examiner, to investigate Everist's mining activities. At trial, Johnson testified that Duffy knew Everist had been living on National Forest System land for some time, and wanted to know whether his residency was reasonably incident to a mining operation. Johnson's investigation revealed that Everist had never submitted a notice of intent to operate or a proposed plan of operations. *See* 36 C.F.R. § 228.4(a). Johnson visited Everist's camp site and saw a trailer with some attachments, two burn barrels and some personal items but no mining equipment or other evidence of a mining operation.

In June 2009, District Ranger Duffy sent a letter notifying Everist that his "occupancy of National Forest System land [was] not authorized by the United States Mining Laws or Regulation" and that he "[did] not have a Special Use Authorization for long term camping." She explained that the "1955 Multiple Use Mining Act (30 U.S.C. 612) requires that occupancy and other non-mining activities be necessary and reasonably incidental to ongoing and active mining." Johnson's May 2009 investigation had concluded that Everist's "occupancy [was] not reasonably incidental to qualifying mining activities" and the "level of mining [Everist] demonstrated [could] be reasonably accomplished without residential occupancy." Accordingly, Duffy directed Everist to "[p]lease remove all of [his] camping equipment and facilities from National Forest System lands and cease and desist all unauthorized residential occupancy of those lands immediately."

She informed him that "[f]ailure to do so will result in legal remedy under 36 CFR 261.10(b)."

Everist did not appeal Duffy's decision. Rather, he sent a one-paragraph response letter, in which he asserted that the Forest Service did not have "subject matter jurisdiction" and that § 261.10 did not apply to mining operations. He continued to reside on National Forest System land.

In November 2009, Johnson visited Everist again. Everist had moved his trailer to a new location about two miles from the previous site and had posted what was essentially a "keep out" sign.[8] At trial, Johnson testified that, other than "some tubs" that may have been mining-related, he saw no mining equipment or other evidence of a mining operation at Everist's site.

In December 2009, the United States filed a misdemeanor information in the United States District Court for the District of Oregon, charging Everist with unlawfully maintaining, occupying and using a residence on National Forest System lands in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10(b). Everist joined the Backlunds' motion to dismiss, which the district court denied. After a bench trial, the district court found Everist guilty of violating § 261.10(b). Everist timely appealed.

## STANDARD OF REVIEW

We review de novo the district court's "construction of federal law and its application to essentially undisputed facts." *Doremus*, 888 F.2d at 631. We also review de novo the district court's decision to preclude an affirmative defense. *See United States v. Gurolla*, 333 F.3d 944, 952 n.8 (9th Cir. 2003).

---

[8]The sign said "STOP HERE" and that persons could not proceed onto his claim without a permit because his "Property [was] Removed From Public Lands by Legislative Grant of July 26, 1866."

## DISCUSSION

### I.

**[1]** Backlund and Everist were convicted of violating 36 C.F.R. § 261.10(b), which prohibits "[c]onstruction, reconstructing, improving, maintaining, occupying or using a residence on National Forest System lands unless authorized by special-use authorization or approved operating plan when such authorization is required." They argue that the Forest Service may not regulate residency on bona fide mining claims and that § 261.10(b) does not apply to them. We conclude that the Forest Service acted within its authority. Mere ownership of an unpatented mining claim does not automatically entitle the owner to reside permanently on National Forest System lands.

**[2]** The mining laws permit residency on a mining claim only to the extent reasonably necessary to mining operations. *See* 30 U.S.C. § 612(a) (providing that an unpatented mining claim "shall not be used . . . for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto"); *United States v. Nogueira*, 403 F.2d 816, 825 (9th Cir. 1968) ("[P]ermanent residence . . . not reasonably related to prospecting, mining or processing operations is not within the [permitted] uses."). *See also United States v. Richardson*, 599 F.2d 290, 295 (9th Cir. 1979) (explaining that the Forest Service may prohibit conduct not reasonably necessary to mining). In addition, the Forest Service has concluded that because long-term residential occupancy is likely to cause significant surface disturbance, mining operations involving residential use typically require an approved plan of operations. *See* 69 Fed. Reg. 41,428, 41,428-41,429 (July 9, 2004) (interim rule treating "residential occupancy and use" as among the types of mineral operations that may require a plan of operations because they are likely to cause significant surface disturbance); 73 Fed. Reg. at 65,988, 65,993 (recognizing that residence involving permanent structures "invari-

ably requires a plan of operations," although temporary camping may not). *See also United States v. Brunskill*, 792 F.2d 938, 941 (9th Cir. 1986) (holding that residential structures on a mining claim were "significant surface disturbances within the scope of 36 C.F.R. Part 228" such that the mining operation required an approved plan of operations).

**[3]** Here, the Forest Service determined that Backlund's activities, including the presence of permanent structures and a travel trailer, were causing a significant surface disturbance. Accordingly, even assuming that Backlund had a right to reside on his claim, he "may not exercise that right without first obtaining approval of [his] operation in the manner specified in 36 C.F.R. Part 228." *Doremus*, 888 F.2d at 633; *see also Brunskill*, 792 F.2d at 941. This prior approval requirement does not "endanger or materially interfere with" Backlund's mining operations and is therefore permissible under the statutory scheme. *Doremus*, 888 F.2d at 633 (quoting 30 U.S.C. § 612(b)) (internal quotation marks omitted).

**[4]** The Forest Service also found that full-time residency was not reasonably necessary to Backlund's and Everist's mining operations. Thus, residential use of their claims was not authorized by the mining laws and regulations. *See Nogueira*, 403 F.2d at 825 (explaining that permanent residence not reasonably related to mining is not authorized by § 612); *Richardson*, 599 F.2d at 295 (providing that the Forest Service may prohibit uses not reasonably necessary to mining). Rather, under these circumstances, their residencies constituted a special use under § 251.50(a), requiring special use authorization, which neither had. *See* 36 C.F.R. § 251.50(a); 73 Fed. Reg. at 65,994 (noting that residency that is not reasonably necessary to mining operations "is not an operation for purposes of 36 CFR 228.3 which is authorized by the United States mining laws . . . [but rather] constitutes a special use").

In effect, Backlund and Everist contend that a mining claimant's residency on his claim is *always* reasonably inci-

dent to mining, so long as the claim is valid. They suggest that we adopted this rule in *United States v. Shumway*, 199 F.3d 1093 (9th Cir. 1999). We did not. In *Shumway*, we simply recognized that residence on a bona fide mining claim *may* be reasonably incident to mining operations and concluded that the defendants in that case had established a genuine issue of fact as to whether their travel trailer qualified as such. *See id.* at 1106. We did not hold that residential occupancy of a valid mining claim was always authorized under the mining laws. Indeed, neither the mining laws nor our precedent supports such a rule. *See Nogueira*, 403 F.2d at 825; *Brunskill*, 792 F.2d at 940-41.

**[5]** We agree with the district court that 36 C.F.R. § 261.10(b) is consistent with the mining laws. Requiring "prior approval" of residential occupancy "is a reasonable method of administering the statutory balance between 'the important interests involved here' " — the interest of miners in reasonable use and enjoyment of their claims, and the interest of the government in improving and protecting the surface resources of the national forests. *Doremus*, 888 F.2d at 632 (quoting *Weiss*, 642 F.2d at 299).[9]

---

[9]We do not suggest that the Forest Service's exercise of its authority to regulate uses of National Forest System lands will never run afoul of Congress' prohibition on regulations that "endanger or materially interfere with" mining operations. In certain circumstances, long-term use of an on-site, permanent residence may be reasonably necessary to mining operations, *see*, *e.g.*, 73 Fed. Reg. at 65,994 ("The Department should not be understood to suggest that actions involving a permanent structure can never be reasonably incident to bona fide locatable mineral operations."), and prohibiting residency in that context may "impermissibly encroach upon the right to the use and enjoyment of placer claims for mining purposes," *Weiss*, 642 F.2d at 299. Whether the Forest Service's application of its rules is reasonable in a particular case depends on the facts of the case, and review of the agency's decision is available as provided by Forest Service regulations and the APA. *See infra* Part III.

II.

**[6]** Backlund and Everist argue that § 261.10(b) is unenforceably vague under the Due Process Clause of the Fifth Amendment. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *United States v. Kim*, 449 F.3d 933, 941 (9th Cir. 2006) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)) (internal quotation marks omitted). The void for vagueness doctrine is concerned both with providing notice to individuals and with establishing minimal guidelines for law enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983). "[V]agueness challenges to statutes that do not involve First Amendment violations must be examined as applied to the defendant." *Kim*, 449 F.3d at 942 (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982)); *see also Doremus*, 888 F.2d at 634-35 (rejecting a due process challenge to 8 C.F.R. § 261.10(k)).

**[7]** Section 261.10(b) provides "appropriate notice of what [is] condemned by law." *United States v. Other Medicine*, 596 F.3d 677, 682 (9th Cir. 2010) (quoting *United States v. Burnside*, 831 F.2d 868, 870 (9th Cir. 1987)) (internal quotation marks omitted). It prohibits residency on National Forest System lands "unless authorized by a special-use authorization or approved operating plan" when either a special use authorization or an approved operating plan is required under the law. 36 C.F.R. § 261.10(b). Part 251, in turn, states that *all uses* of National Forest System lands, except certain expressly enumerated activities such as mining, require special use authorization. *See id.* § 251.50(a). Under part 228, a mining operation requires an approved operating plan if it is likely to cause a significant surface disturbance. *See id.* § 228.4(a)(4). Section 261.10(b) therefore is not unconstitutionally vague.

**[8]** In addition, Backlund and Everist had actual notice that their use of National Forest System lands violated Forest Ser-

vice regulations. *See United States v. Pfeifer*, 371 F.3d 430, 437 (8th Cir. 2004) (concluding that the defendant suffered no due process violation because, among other things, the evidence showed that he had actual notice that the charged conduct was prohibited). Backlund knew that he was required to obtain a plan of operations. Indeed, he sought an approved plan on more than one occasion and admits that he did not have one. As for Everist, the Forest Service explicitly informed him that his residency was not authorized by the mining laws and regulations because it was not "reasonably incidental to ongoing and active mining," and that he did not have special use authorization for non-mining-related occupancy. Accordingly, there is no due process problem here.

Backlund and Everist also argue that the Forest Service rules confer unfettered discretion on district rangers to arbitrarily "deem any particular residence criminal or noncriminal." They overlook the comprehensive statutory and regulatory regime that governs the agency's actions in this context. The Department of Agriculture promulgated detailed rules to guide the Forest Service's evaluation and regulation of mining operations. In the implementation of these rules, the agency's authority is cabined by Congress' instruction that regulation not "endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto." 30 U.S.C. § 612(b). Furthermore, the rules provide for meaningful administrative review of Forest Service decisions relating to use and occupancy of National Forest System lands, *see* 36 C.F.R. part 251, subpart C, and judicial review is available under the APA. This is not unfettered discretion. *See Doremus*, 888 F.2d at 635 n.4 (rejecting vagueness challenge to mining regulations in part because rules provide for administrative and judicial review of agency decisions).

Nor is the rule of lenity applicable here. The rule of lenity is motivated by the principle of "fair warning" and requires that ambiguous criminal statutes be construed in favor of the

accused. *See McBoyle v. United States*, 283 U.S. 25, 27 (1931). The threshold for employing the rule is high, as the "rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 130 S. Ct. 2499, 2508-09 (2010) (internal quotation marks and citation omitted). Section 261.10(b) is not ambiguous. It is clear that Congress intended the Department of Agriculture to regulate use and occupancy of the national forests, and that the Department requires individuals wishing to reside on National Forest System lands to obtain authorization for their activities.

## III.

Finally, Backlund and Everist argue that the district court erred by precluding them from challenging — on the merits — the Forest Service's decisions declining to authorize residency on their mining claims.[10] They both sought to introduce evidence showing that the agency's determination that residency was not reasonably necessary to their mining operations was irrational and erroneous. Backlund also contested the Forest Service's finding that his mining operation was likely to cause significant surface disturbance and, therefore, required a plan of operations. Backlund and Everist argue that the district court denied them due process by foreclosing these affirmative defenses.

**[9]** Backlund and Everist cite *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), an immigration case in which the Supreme Court stated that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction," the criminal defendant has a Fifth Amendment right to "*some* meaningful

---

[10]With respect to Backlund, the Forest Service agreed to approve seasonal residency but denied his request for year-round residency.

review of the administrative proceeding." *Id.* at 837-38. The Court allowed the defendants, two Mexican nationals charged with re-entry after deportation in violation of 8 U.S.C. § 1326, to introduce evidence of procedural due process violations in their prior deportation hearing because of defects that had "foreclose[d] judicial review of that proceeding." *Id.* at 838.

**[10]** Here, Forest Service regulations and the APA provide for meaningful administrative and judicial review of Forest Service decisions. Written decisions by a district ranger, such as those at issue here, are subject to two levels of administrative appeal. *See* 36 C.F.R. § 251.87(c). Section 251.99 outlines the procedures a reviewing officer must follow in making the appeal decision. In addition, an appellant may seek a stay of a decision while his appeal is pending if "harmful effects . . . would occur during pendency of the appeal." *Id.* § 251.91(b). The regulations make clear that the reviewing officer's disposition constitutes final agency action. *See id.* § 251.99(f).[11] Once the petitioner has exhausted administrative remedies, federal court review of final agency action is available under the APA. *See* 5 U.S.C. §§ 702, 704; *Clouser v. Espy*, 42 F.3d 1522, 1531-32 (9th Cir. 1994) (explaining that APA exhaustion requirement applies to appeals of Forest Service decisions); *Doremus*, 888 F.2d at 632-33 (requiring administrative exhaustion before judicial review under the APA of a Forest Service decision on a plan of operations).

**[11]** With respect to Everist, the Forest Service found that his mining activity was so minimal that it did not justify on-site residency. Everist did not appeal this determination.

---

[11]The regulations governing "appealable decisions" do not explicitly cover the notice that Everist received. *See* 36 C.F.R. § 251.82. However, by their terms, the rules apply broadly to "the full range of actions and decisions a forest officer takes to issue written instruments, or to manage authorized uses of National Forest System lands." *Id.* § 251.81; *see also id.* § 251.80. In addition, the notice Everist received is of a similar ilk to those expressly listed in § 251.82; and, in briefing and at oral argument, the government appears to have conceded that the notice was appealable.

Therefore, he did not exhaust his administrative remedies and waived his right to judicial review. *See Doremus*, 888 F.2d at 633. Everist's resort to *Mendoza-Lopez* is unavailing, for he had — but chose to forgo — the very opportunity for judicial review that the defendants in *Mendoza-Lopez* were wrongfully denied.[12] He may not now circumvent the APA's exhaustion requirement by collaterally attacking the agency decision as a defense in this criminal proceeding. *See Doremus*, 888 F.2d at 633; *cf. United States v. Lowry*, 512 F.3d 1194, 1202-03 (9th Cir. 2008) (precluding a collateral attack on an agency decision outside the six-year statute of limitations for direct review).

**[12]** As for Backlund, he also did not appeal the Forest Service's finding that his mining operation was likely to cause a significant surface disturbance and therefore required an approved operating plan. Accordingly, he did not exhaust this claim and was not entitled to raise it before the district court. *See Clouser*, 42 F.3d at 1532; *Doremus*, 888 F.2d at 633. He did, however, exhaust his claim that the Forest Service's prohibition on year-round residential occupancy of the Climax claims was not in accordance with law. Thus, under the APA, he may seek direct judicial review of this determination. The question here is whether he may obtain that review in this criminal proceeding, rather than through a more traditional direct appeal.

---

[12] We note that 36 C.F.R. § 251.84(a) requires that "[a] Deciding Officer shall promptly give written notice of decisions subject to appeal under this subpart . . . The notice shall . . . specify the name of the officer to whom an appeal of the decision may be filed, the address, and the deadline for filing an appeal." Duffy's letter to Everist failed to apprise him of his right to seek review in this manner, but Everist did not raise this issue before the district court, or on appeal in this court, so we decline to consider it. *See* Fed. R. App. P. 28(a)(9); *United States v. Williamson*, 439 F.3d 1125, 1138 (9th Cir. 2006) ("With no argument presented, we decline to address the claim. . . . We will not manufacture arguments for an appellant who has failed to present . . . specific, cogent argument[s] for [the court's] consideration, especially where a host of other issues are presented for review." (citation and internal quotation marks omitted)).

In *Coleman v. United States*, 363 F.2d 190, 196 (9th Cir. 1966), *rev'd on other grounds*, 390 U.S. 599 (1968), a civil ejectment suit initiated by the government, we permitted a defendant to challenge, under the APA's arbitrary and capricious standard, the underlying administrative determination that his mining claims were invalid. The United States brought the civil ejectment action against Coleman a year and a half after the agency issued its final administrative decision. Coleman counterclaimed, seeking APA review of the agency decision invalidating his claims. *See id.* at 193. On appeal, we rejected the government's argument that because Coleman did not seek direct judicial review of the administrative decision, review in the ejectment suit was "under a more restrictive standard." *Id.* at 196. We reasoned that there was no statute of limitations on APA claims and concluded that we could not "discern any reason for a difference respecting the scope and character of review of agency action which would depend upon who commenced the action." *Id.*[13] On the merits, we held that the agency misapplied the statute and applicable case law, and that the decision invalidating Coleman's mining claims was therefore not in accordance with law. *See id.* at 203-04. We ordered the district court to deny the government's claim for ejectment, grant Coleman's APA counterclaim and remand to the agency for further proceedings. *See id.* at 204.

In contrast, in *United States v. Lowry*, 512 F.3d 1194 (9th Cir. 2008), we held that collateral review of agency action was not available. The United States prosecuted Lowry for residing on national forest land "without a special-use authorization, or as otherwise authorized by Federal law or regulation." *Id.* at 1195-96. As an affirmative defense at trial, Lowry tried to introduce evidence showing that, over 10 years ear-

---

[13]We later held that the general six-year statute of limitations for civil actions against the United States applies to APA claims. *See* 28 U.S.C. § 2401(a); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 712-14 (9th Cir. 1991).

lier, the Forest Service had improperly denied her Indian land allotment application, which, if granted, would have authorized her residency on national forest land. The district court excluded the evidence. *Id.* at 1196-97. On appeal, we concluded that because Lowry declined to exercise her right to seek direct judicial review of the agency decision within the time allowed, she could not collaterally attack it in a subsequent criminal proceeding. *See id.* at 1203. We reasoned that "allowing Lowry to collaterally attack the administrative proceedings would effectively circumvent the six-year statute of limitations we have held governs review of such actions." *Id.*[14] Precluding the challenge did not violate due process because Lowry was not deprived of judicial review; she chose to forgo it. *See id.* at 1202-03.

Our decision in *Lowry* reflects the eminently reasonable principle that parties may not use a collateral proceeding to end-run the procedural requirements governing appeals of administrative decisions. It is akin to *Doremus*, in which we precluded a criminal defendant from challenging the administrative decision on which his prosecution was predicated because he failed to exhaust his administrative remedies. *See* 888 F.2d at 633. *See also Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 736 (9th Cir. 2006) (noting that collateral attack doctrine prevents parties from evading administrative procedures); *Vinieratos v. United States, Dept. of Air Force*, 939 F.2d 762, 772 (9th Cir. 1991) ("[A]n administrative exhaustion rule is meaningless if claimants may impede and abandon the administrative process and yet still be heard in the federal courts."). Backlund, however, is within the APA's six-year statute of limitations and has satisfied the APA's administrative exhaustion requirement with respect to his claim that the Forest Service improperly found that year-

[14]Lowry sought review of the agency decision under the Forest Allotment Act, which like the APA has a six-year limitations period. We noted in *Lowry* that the APA may have provided an additional avenue for judicial review. *See Lowry*, 512 F.3d at 1203 n.9.

round residency was not reasonably necessary to his mining operation, which resulted in denial of his proposed plan of operations. The APA provides that "[e]xcept to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement." 5 U.S.C. § 703. Backlund did have a prior and adequate opportunity for judicial review: he could have initiated an APA suit as soon as the agency finally ruled against him. Nonetheless, the government has identified nothing in the Forest Service regulations, the agency organic act or the APA that prescribes direct appeal as the *exclusive* route to federal court, or fixes a time limit different from the APA's six-year statute of limitations.

**[13]** We therefore hold that the APA affords a person in Backlund's position at least two options for obtaining judicial review of the disputed agency action. He may file suit in federal district court under the APA, or he may challenge the agency's decision in a subsequent criminal proceeding. In either case, he must act within the six-year time limit. *See Coleman*, 363 F.2d at 196. We recognize this means individuals aggrieved by agency decisions may choose to delay judicial review of adverse agency action until the government acts to enforce the decision. *See United States v. Menendez*, 48 F.3d 1401, 1410-14 (5th Cir. 1995) (permitting an APA challenge to the predicate agency decision in a civil suit to collect a penalty assessed in an administrative adjudication). The government, however, can mitigate this potential for delay by promptly initiating judicial proceedings and defending the agency decision in those proceedings.

**[14]** Accordingly, we conclude that the district court erred by barring Backlund from presenting his APA challenge as a defense to the alleged violation of 36 C.F.R. § 261.10(b).[15] "A

---

[15]To be clear, we do not hold that proving the correctness or even the existence of the agency action was an element of the government's criminal case against Backlund. Backlund does not argue that it was. The lawfulness of the agency action was, however, relevant to Backlund's affirmative defense that his residency was authorized.

violation of the right to present a defense requires reversal of a guilty verdict unless the Government convinces us that the error was harmless beyond a reasonable doubt." *United States v. Stever*, 603 F.3d 747, 757 (9th Cir. 2010); *see also United States v. Pineda-Doval*, 614 F.3d 1019, 1032-34 (9th Cir. 2010) (same). The government did not argue that the district court's error was harmless.[16]

### IV.

**[15]** For the reasons stated, we affirm Everist's conviction. Because the district court erroneously precluded Backlund from challenging the Forest Service's decision denying his plan of operations, we reverse Backlund's conviction and remand to the district court for further proceedings.

The parties shall bear their own costs on appeal.

**JUDGMENT IN NO. 10-30264 VACATED AND CASE REMANDED; JUDGMENT IN NO. 10-30289 AFFIRMED.**

---

[16]In a petition for panel rehearing, the government argues for the first time that any error was harmless because even if Backlund had succeeded in convincing the district court that the Forest Service decision was arbitrary and capricious, the district court's decision would not legitimize Backlund's residency, which would remain unauthorized — and therefore unlawful — until the Forest Service approved Backlund's proposed plan of operations. The government's argument largely misses the point. Backlund's theory is that withholding authorization for year round residency on the Climax claims amounts to a "material interfer[ence] with . . . min-ing[,]" 30 U.S.C. § 612(b), because the prohibition makes it financially impossible for him to mine his claims. Backlund argued that the Forest Service's decision "so unreasonably circumscribed" his mining operation "as to amount to a prohibition," and therefore violated the mining laws. *United States v. Weiss*, 642 F.2d 296, 299 (9th Cir. 1981). We express no opinion on the merits of Backlund's claim and leave it to the district court to evaluate in the first instance.