**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 17 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    17-10495 |
| Plaintiff-Appellee, | D.C. No. 2:16-cr-00043-WBS-1 |
| v. | |
| DEAN ROBERT MOSTAD, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted November 16, 2018
San Francisco, California

Before:  TASHIMA and M. SMITH, Circuit Judges, and PIERSOL,[**] District Judge.

Dean Robert Mostad appeals his conviction of violating United States Forest Service (Forest Service) regulations that prohibit an unauthorized "significant surface disturbance . . . on National Forest System lands," 36 C.F.R. § 261.10(a),

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

"[d]amaging any natural feature or other property of the United States," 36 C.F.R. § 261.9(a), and "[v]iolating any term or condition of a[n] . . . approved operating plan," 36 C.F.R. § 261.10(*l*). We affirm.

1.    Mostad argues that there was insufficient evidence to support six of his seven convictions. We review sufficiency challenges de novo and "viewing the evidence in the light most favorable to the prosecution," we ask whether "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *United States v. Kaplan*, 836 F.3d 1199, 1211–12 (9th Cir. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Doing so, we conclude that sufficient evidence sustains each of Mostad's convictions.

The evidence at trial amply shows that the Forest Service never authorized Mostad to disturb riparian vegetation or excavate pond G as part of his mining operations. The changes in excavation maps from Mostad's 2008 proposal to the approved 2008 Plan of Operations and from Mostad's February 23, 2009 proposal to the approved 2009 Plan of Operations (2009 Plan) show clear communications from the Forest Service that neither the riparian areas nor pond G may be disturbed. In addition, it is clear from photos and testimony from Forest Service personnel and other agencies conducting the October 30, 2009 inspection that Mostad's mining actions destroyed the riparian vegetation and pond G. The government thus presented sufficient evidence to find an unauthorized significant

2                                                                              17-10495

surface disturbance on National Forest System lands and damage to a natural feature of the United States, in violation of 16 U.S.C. § 551 and 36 C.F.R. §§ 261.9(a) and 210.10(a). These actions also sufficiently proved that Mostad violated the terms of his approved operating plan in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10(l).

The evidence at trial also indicated that Mostad placed an excavator near the Downie River without placing any sort of device to catch oil. This action, as well as the mining waste placed directly on riparian vegetation "between 30 and 50 feet" from Downie River, provided sufficient evidence to find that Mostad placed in and near a stream substances which may pollute in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.11(c).

2. Mostad argues that his conviction should be vacated because the government failed to issue a notice of noncompliance as required by 36 C.F.R. § 228.7 before initiating criminal proceedings, and that its failure to do so violated his due process right to fair notice. We disagree.

Fair notice requires that a mining operator "of ordinary intelligence [have] a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Here, the 2009 Plan detailed the places where Mostad was permitted to conduct geologic sampling activities after the Forest Service clarified that pond G and the riparian areas could not be disturbed. The 2009 Plan

also stated that Mostad "shall comply with all applicable Federal, State, and local laws, regulations, and standards . . . [and] any unapproved deviation from the [proposed operation] may be construed as unlawful, and the United States Forest Service may take appropriate legal action." Mostad was aware of the 2009 Plan's limited authorization as well as the consequences of not following this authorization. The magistrate judge found that Mostad knew that he was not authorized to excavate within Pond G, or within . . . riparian vegetation and trees," and that he "knew that the test holes were to have been filled and leveled prior to October 15 and that he was required to comply with the plan provisions to prevent water contamination from waste pile runoff or equipment leaks." In other words, the magistrate judge found that Mostad had actual notice that the conduct for which he was ultimately charged was unauthorized. These findings were not clearly erroneous. As we have previously held, actual notice defeats a due process challenge in this context. *United States v. Backlund*, 689 F.3d 986, 997 (9th Cir. 2012) (concluding that there was "no due process problem" where defendants "had actual notice that their use of National Forest System lands violated Forest Service regulations"). Because Mostad received actual notice, due process requires no more.

3.     Lastly, Mostad argues that his actions were not subject to 36 C.F.R. § 261 because the government failed to exhaust § 228.7's administrative remedies.

Typically, the judicial doctrine requiring exhaustion of administrative remedies focuses on an individual's ability to bring a complaint against a federal agency. *See McCarthy v. Madigan*, 503 U.S. 140, 144–48 (1991). The policy behind this doctrine focuses on the expertise and efficiency of an administrative agency to identify and correct any mistake, and a general deference due to "Congress' delegation of authority to . . . agencies, not the courts, [] to have primary responsibility for the programs that Congress has charged them to administer." *Id.* at 145. This policy, however, is inapplicable to the circumstances of this case. Indeed, as the district court aptly noted, requiring exhaustion here would mean that "miners would be able to operate outside of their plans of operations potentially causing mass destruction, and [the Forest Service] would have no recourse until exhausting administrative remedies."

Nothing in § 261 prohibits the government from bringing criminal charges against a mining operator without first issuing an administrative notice of noncompliance. Relatedly, § 228 provides no enforcement mechanism for the Forest Service, and only grants an administrative process. As we explained in *United States v. Doremus*, 888 F.2d 630, 632 (9th Cir. 1989), the regulations are better understood as working simultaneously to provide the Forest Service with means to both protect forest resources *and* provide access to minerals and land as required by the 1872 Mining Laws.

**AFFIRMED.**